### FREDERICK HALL *vs.* ABIJAH MAYO & others.

For the purpose of defining the boundary of a lot of land described in a record one hundred and fifty years old as "ranging about a rod to the north of Elisha Taylor's house," evidence of a tradition among Elisha Taylor's descendants residing upon the land, and of a statement on the land to one of them by his great uncle sixty years ago, concerning the position of the house, is inadmissible.

In an action of tort of the nature of trespass *quare clausum*, if the plaintiff by his declaration substantially informs the defendant of the close in which the trespass is alleged to have been committed, and satisfies the jury that the defendant did commit a trespass therein, his inability to prove with substantial accuracy how far beyond the place of the trespass his title extended does not defeat his right to recover damages for the trespass proved.

GRAY, J.* This is an action of tort in the nature of trespass for breaking and entering the plaintiff's close upon the sea-shore

---

*\*. This case and the two cases following were argued on November 12, 1867 before all the judges but CHAPMAN, J.*

in Dennis, formerly a part of Yarmouth, digging up the earth, and erecting a fish weir. The defendants in their answer denied the plaintiff's title, and claimed title under Vienna Hall and others, under whom the defendants acted, in the place where the weir was erected. Both parties traced their titles to the division of lands in 1714 among the original proprietors of the town of Yarmouth, as appearing in their records. The title under which the defendants justified included three lots in that division, one of the courses of which was described in the record as "ranging about a rod to the north of Elisha Taylor's house." The plaintiff proved title to a fourth lot in that division, lying next easterly of these three lots, and described in the record as beginning at a certain stake with peculiar marks, (which did not exist at the time of the trial or within the memory of any witness,) bounded by the easternmost of the three lots, and "extending so far easterly to take in all the meadow along the shore until it comes against a hill called Fox Hill." The declaration described this lot as "situated in the town of Dennis on the north side thereof, and bounded as follows: Beginning at a stake set" recently by the plaintiff, "where a stake marked" as described in the record "formerly stood, on the beach next to the upland, thence running easterly by the upland two hundred and eighty rods to a point opposite Fox Hill, and thence in a northwest line to the sea, then beginning at the stake first mentioned and running northwest to the sea, said close being bounded on the north by the sea." There was no controversy as to the easterly end of the plaintiff's lot. But there was conflicting evidence as to the course and position of the boundary line between his lot and the other three lots. This line, according to the plaintiff's claim, was to the west, and, according to the defendant's claim, to the east, of the weir.

In order to establish the locality of Elisha Taylor's house in 1714, the plaintiff called James Taylor, who testified that he was a lineal descendant of Elisha Taylor; that the family had lived upon the same place from his earliest recollection; that about sixty years ago his great uncle showed him some bricks remaining in the ground near the house of the witness, and

struck down his cane, and they took up three or four large clumsy bricks, five or six inches under the earth. The plaintiff then proposed to ask the witness what was said by his great uncle, and if there was any tradition in his family as to where Elisha Taylor's house stood; but the questions were objected to by the defendant and excluded by the superior court. This exclusion is the first ground of exception.

We are of opinion that the evidence was rightly rejected. The exceptions to the general rule excluding hearsay evidence, which permit the introduction of reputation or tradition, or of declarations of persons deceased, as to matters of public or general interest, or questions of pedigree, do not extend to a question of private boundary, in which no considerable number of persons have a legal interest. 1 Greenl. Ev. §§ 103, 104, 145 and note. *Green* v. *Chelsea*, 24 Pick. 80. *Dunraven* v. *Llewellyn*, 15 Q. B. 791. *The Queen* v. *Bedfordshire*, 4 El. & Bl. 535. In *Thomas* v. *Jenkins*, 6 Ad. & El. 525, cited for the plaintiff, the question in controversy indeed was of the boundaries of an estate; but the evidence admitted of the declarations of old persons, since deceased, was as to the boundaries of a hamlet, which was a permanent division, in the limits of which a large number of persons were legally interested; it had been previously testified, without objection, that the boundaries of the estate and of the hamlet were the same; and Mr. Justice Patteson said that the evidence would clearly not have been admissible upon the precise question of the boundary of the estate, or if the identity of the boundaries had been proved by evidence of reputation.

In the case at bar, the evidence did not even directly relate to a boundary line, but merely to the position of a certain house, and was clearly inadmissible. In *Ireland* v. *Powell*, Peake Ev. 13, 14, Mr. Justice Chambre admitted evidence of general reputation that a town extended to a certain close, and that old people, since deceased, had said that such was the boundary of the town; but would not suffer it to be proved that deceased persons had said that there were formerly houses where none now stood, because that was evidence of a particular fact, and

not of general reputation. And in *The King* v. *Antrobus*, 2 Ad. & El. 795, Mr. Justice Williams said that this had always been held a leading case. See also *The Queen* v. *Bliss*, 2 Nev. & P. 464, and 7 Ad. & El. 550.

The remaining questions arise upon the instructions given by the presiding judge to the jury, and his refusal to give the instructions requested by the plaintiff. Among the instructions given were that " the burden of proof being on the plaintiff, if the jury are unable to find where the line between the third and fourth lot was substantially, the plaintiff has not sustained the burden of proof and cannot recover ; " and that " the plaintiff claiming under the original title in the laying out of the fourth lot by the same terms of description as were used in the original laying out, if on the whole evidence the jury are unable to determine where on the surface of the earth the line between the third and fourth lots was, with substantial accuracy, the plaintiff has not sustained the burden of proof and cannot recover." One of the instructions refused was that " if the jury find that the line of the plaintiff's ownership is west of the defendant's weir, they must find for the plaintiff, although they cannot precisely fix the line."

The Gen. Sts. *c.* 129, § 6, reënacting the St. of 1839, *c.* 151, § 3, provide that " in actions of tort for breaking and entering the plaintiff's close, the place of the alleged trespass shall be designated in the plaintiff's declaration by name, abuttals, or other proper description." The object of this provision, which was derived from the English rules of Hilary term 1834, was to require the plaintiff by his declaration in all cases to inform the defendant of the place in which he is alleged to have committed the trespass, and to prevent the necessity of a new assignment in case the defendant should plead soil and freehold ; not to oblige the plaintiff to allege or prove the boundaries of the premises with the precision of a writ of entry to recover the land. 1 Saund. 296 *b, et seq. North* v. *Ingamells,* 9 M. & W. 249. *Webber* v. *Richards,* 1 Q. B. 439. *Forbush* v. *Lombard,* 13 Met. 109. The rules of pleading in a real action, in which the title to the whole of the demanded premises is put

in issue, do not apply to an action of tort, in which the title to the close cannot be definitively settled, and in which judgment for the plaintiff merely determines that the defendant has trespassed upon some part of the close, leaving it to be ascertained by oral evidence where the trespass was actually proved to have been committed, in case the judgment should be relied on in a subsequent action. The plaintiff, when suing in trespass, must indeed be confined to the limits of the close as set forth in the declaration, and there must be such a substantial correspondence between the description and the proof as to secure the defendant from being misled. But if the plaintiff proves his title to part only of the close described, and a trespass by the defendant upon that part, he may recover damages according to the nature and extent of the trespass proved. *Tapley* v. *Wainwright*, 5 B. & Ad. 393. *Smith* v. *Royston*, 8 M. & W. 381. *Peaslee* v. *Wadleigh*, 5 N. H. 321, 322. *Rich* v. *Rich*, 16 Wend. 663. 2 Greenl. Ev. § 618 *a.*

In this case, the difficulty does not appear to have been so much in proving that the boundaries of the plaintiff's estate corresponded with the description in his declaration and in the records, as in running the lines upon the land. If the plaintiff had by his declaration substantially informed the defendant of the close in which it was contended that the trespass had been committed, as it afterwards appeared in evidence; and proved to the satisfaction of the jury that the defendant had committed a trespass within that close; his inability to prove with substantial accuracy how far beyond the place of the trespass his title extended could not defeat his right to recover damages for the trespass actually proved. The learned judge therefore erred in instructing the jury that if they were unable to determine with substantial accuracy the position upon the surface of the earth of the line in controversy, the plaintiff could not recover; as well as in refusing to instruct them, as requested by the plaintiff, that if they found that the line of the plaintiff's ownership included the place of the alleged trespass, their verdict should be for him. The instructions given did not supply the want of the instruction requested.

The other instructions asked for assumed a particular state of facts as proved, the evidence of which may be varied at another trial, and therefore need no consideration at the present time. *Exceptions sustained.*

*G. A. King,* for the plaintiff.

*G Marston & J. Higgins,* for the defendants.