. INHABITANTS OF ENFIELD *vs.* CAROLINE D. WOODS, executrix.

Hampshire.　September 19, 1911. — September 13, 1912.

Present: RUGG, C. J., HAMMOND, LORING, & BRALEY, JJ.

*Equity Jurisdiction,* To enjoin irreparable injury to real estate. *Superior Court,*
Jurisdiction in equity. *Adverse Possession. Evidence,* Of adverse possession,
Of reputation or tradition as to matters of public or general interest. *Equity
Pleading and Practice,* Findings of master.

St. 1904, c. 448, which transferred from the Superior Court to the Land Court
jurisdiction in the proceedings relating to real estate there enumerated of which
the Superior Court had exclusive jurisdiction, did not take away from the
Superior Court its jurisdiction, concurrent with that of the Supreme Judicial
Court, over suits in equity to enjoin irreparable injury to real estate in which
the title to the real estate is put in issue.

For the purpose of proving a title to land by adverse possession evidence of a gift
of the land by parol is competent to show the character of the possession.

Under the exception to the rule against hearsay which allows the admission of
evidence of a general or common reputation as to a matter of public or general
interest, upon the issue whether a town had acquired title to a tract of land for
use as a common by adverse possession which began by a parol gift, a witness
seventy-eight years old may be allowed to testify that his grandmother came to
the town in 1802 and died in 1857, and that he had heard her "and the rest of the
old people talk about it and say" that a certain person gave the common to the
town; and in connection with this evidence another witness may be allowed to
testify that his father, who died in 1908 at the age of seventy-eight, told him that
the witness's grandfather said that the person in question gave this piece of
land to the town for a common.

In a suit in equity by a town to enjoin the defendant from removing a soldiers'
monument erected by the town from a lot of land used by the town as a common,
to which the defendant claimed title, the plaintiff's case was that it took pos-
session of the land under a parol gift made in 1814 and had held exclusive ad-
verse possession of it ever since. The defendant's case was that her husband had
acquired title to the land by adverse possession which began in 1884 and lasted
until the soldiers' monument was erected by the plaintiff in 1907, in which year
the defendant's husband died. A master, subject to the defendant's exception,
"admitted evidence offered by the plaintiff from the valuation lists of the town
from 1875 down through all the years, showing that the town common was
noted on the books of the assessors as town property and exempt under the
law." *Held,* that it was competent for the plaintiff to show that throughout the
twenty-three years during which the defendant contended that her husband
was in exclusive adverse possession of the land he never paid a tax upon it, and
that this could be shown by introducing in evidence the "valuation lists" by
which it appeared that no tax had been assessed to any one upon the land during
those years.

In a suit in equity by a town founded on the plaintiff's title to a tract of land used by it as a common, which the plaintiff contended that it had acquired by adverse possession, a finding by a master "that the town . . . its selectmen and citizens generally have laid claim to said land as the property of the town . . . ever since a time prior to the year 1814" is a finding that the claim was asserted by corporate action, if such action was necessary.

BILL IN EQUITY, filed in the Superior Court on June 9, 1908, by the town of Enfield against Caroline D. Woods, the sole devisee under the will of her late husband Cyrus F. Woods, to enjoin the defendant from removing a soldiers' monument from a parcel of land of about three quarters of an acre known as the "Common," alleged to belong to the plaintiff and to have been acquired by an open, adverse and uninterrupted possession and use and occupation by the plaintiff of more than ninety years.

The answer alleged ownership of the land by the defendant. The defendant afterwards filed a plea to the jurisdiction of the court, alleging that the case was within the exclusive jurisdiction of the Land Court.

The case was referred to John C. Hammond, Esquire, as master. The facts found by the master which are material to the questions of law before this court are stated in the opinion. The master found that the fee of the land was in the plaintiff and that the defendant had no right, title or interest therein.

Later the case was heard by *King*, J. He made an interlocutory decree, overruling the defendant's plea to the jurisdiction, overruling the defendant's exceptions to the master's report "excepting only the master's finding that the plaintiff acquired title to the land and premises in question by parol gift from Robert Field," and otherwise confirming the master's report.

The judge made a final decree, adjudging that the plaintiff was the owner of the parcel of land known as the "Common" on which the plaintiff had erected a soldiers' monument, enjoining the defendant from interfering with the monument or the common, and giving the plaintiff costs. The defendant appealed from the decree.

The case was submitted on briefs.

*E. H. Lathrop*, for the defendant.

*J. H. Schoonmaker*, for the plaintiff.

LORING, J. This case is before us on an appeal from a decree in favor of the plaintiff after all but one of the defendant's excep-

tions to the master's report had been overruled and after a plea to the jurisdiction also had been overruled.

The bill is brought by the town of Enfield as owner of the fee in a lot of land called the "Common," to enjoin the defendant (who claimed to own the land) from removing from it a soldiers' monument erected pursuant to a vote of the town.

The plea to the jurisdiction is based on the theory that St. 1904, c. 448, took away from the Superior Court its jurisdiction as a court of equity to enjoin irreparable injury to land if the title to it is put in issue in the cause. But the scope of that act does not go so far. It is confined to transferring from the Superior Court to the Land Court jurisdiction in case of writs of entry under R. L. c. 179, petitions to require the bringing of an action to try title under R. L. c. 182, §§ 1–5, petitions to determine the validity of incumbrances under R. L. c. 182, §§ 11–14, and petitions to discharge mortgages under R. L. c. 182, § 15. In all these cases the Superior Court had exclusive jurisdiction before the enactment of this act. But of such a bill as the bill in this suit the Supreme Judicial Court as well as the Superior Court had jurisdiction before St. 1904, c. 448. The jurisdiction of neither court in suits like that now before us was affected by the act.

The master found that the plaintiff "town did acquire by parol gift a title to said 'Common' including the land in dispute at a time before the year 1814, and thereafter for a period of seventy years and more the town continued in open, uninterrupted possession with claim of right disputed by no one." He found that the defendant's claim to be the owner of the land in question depended (first) upon a deed to Cyrus F. Woods (her predecessor in title) made in 1884; this he found and ruled did not as matter of description cover the locus; (second) on a deed to the defendant from one Woods and one Towne, made in 1908, which as matter of description did cover the locus but which he found was inoperative because the grantors had no title; and (third) on adverse possession by Cyrus F. and the defendant since 1884. Upon the adverse possession of the plaintiff town and of the defendant and her predecessor in title the master made these two additional findings: "I find that the town of Enfield, its selectmen and citizens generally have laid claim to said land as the property of the town of Enfield ever since a time prior to the year 1814.

It was used for gatherings on public occasions and for a recreation ground for the younger people playing games. After he, Cyrus F. Woods, acquired title in 1884 he did at times make claim that his title extended to the main highway and included the tract in dispute. He did not have any open, uninterrupted, adverse possession. He did not exclude the town of Enfield, or the general public, for any substantial period of time. The contention of the defendant that Cyrus F. Woods held title by adverse possession is not sustained. I find that he did not have title by adverse possession." "I find the fee and title to the land is in the plaintiff the town of Enfield and that the defendant has no right, title or interest therein."

The exception sustained by the Superior Court was to the finding of the master "that the town did acquire by parol gift title to said 'Common,' including the land in dispute, and at a time before the year 1814." If that had stood by itself it would have to be construed to mean that the fee in land can pass by word of mouth; if that is what the master should be taken to have ruled this exception was rightly sustained. But taking these words in connection with what follows we should have been inclined to construe it to be a finding that the plaintiff had acquired title by adverse possession under a parol gift, which possession had lasted for seventy years before the defendant's claim of title by deed or adverse possession began in 1884. Later on in his report there is a further statement by the master which makes it plain that this is what he meant. In dealing with one of the defendant's requests for rulings the master said: "I have found as a fact based on all the evidence, that the town, as early as the year 1814, was in possession of said entire tract called the Common (excluding the Church Common as now known), by parol gift of one Robert Field, and that this possession was exclusive and adverse to any claim of private ownership for at least seventy years thereafter." For the purpose of making out title by adverse possession, evidence of a gift by parol is competent to show the character of the possession. See for example *Wheeler* v. *Laird,* 147 Mass. 421.

The next question or questions submitted to the court by the master concern the admission of the testimony of one Bestor and one Harwood. Bestor was allowed to testify against the defendant's objection that he was seventy-eight years old and had lived

in Enfield all his life; that his grandmother, one of the old settlers of the town, came there in 1802 and died in 1857; and that "he had heard his grandmother and the rest of the old people talk about it and say that Robert Field gave the common and burying ground to the town of Greenwich." Harwood was allowed to testify that his father, who died in 1908 at the age of seventy-eight, told him "that his [the witness's] grandfather said that Robert Field gave this piece of land to the South Parish of Greenwich for a common."

We assume on the report that there was no evidence that the declarations made by Harwood's grandfather and those made by Bestor's grandmother and "the rest of the old people" (referred to in his testimony) were made "upon the personal knowledge of the declarants." For that reason the testimony cannot be taken to have been admitted under R. L. c. 175, § 66.

These declarations, being declarations upon a matter of general if not of public interest, are within one of the exceptions to the rule excluding hearsay evidence so far as the subject matter of them is concerned; as to this see *Hall* v. *Mayo*, 97 Mass. 416, 418; *Boston Water Power Co.* v. *Hanlon*, 132 Mass. 483, 484.

It is generally laid down that evidence to be admissible under this exception to the rule against hearsay must be evidence of a general or common reputation as to the existence or non-existence of the matter of public or general interest. See for example Starkie on Evidence, (10th Am. ed.) 47–49; 1 Phillips on Evidence, (6th ed.) 236; 1 Greenleaf on Evidence, (5th ed.) § 128; Wigmore on Evidence, §§ 1584, 1585. The statement of the rule heretofore made in our decisions might raise the question whether reputation evidence in this connection means anything more than evidence which is reputed to be the fact as distinguished from evidence which is known by the declarant to be the fact and so to include the individual assertion of a deceased person not made on personal knowledge. See Gray, J., in *Hall* v. *Mayo, ubi supra,* and Devens, J., in *Boston Water Power Co.* v. *Hanlon, ubi supra.*

We do not find it necessary to pass upon that question here. For if this exception is limited to cases where there was a general or common reputation, we are of opinion that it would be going too far to limit the exception to cases where the declarant stated that there was a general reputation. Since it is not possible to

determine by a preliminary examination whether there was or was
not a general reputation, we are of opinion that testimony by
a witness that he had heard the fact "from old persons" now
deceased is competent evidence of a general or common reputa-
tion. Bestor's testimony therefore was competent so far as this
matter is concerned. And see Wigmore on Evidence, § 1584. If
it is competent to prove a general or common reputation by the
declaration of one person that he had heard the fact from old
persons now deceased, it is equally competent to prove a gen-
eral or common reputation by putting in evidence the declara-
tions of many persons where each declarant heard of the fact
from one person only. Where all the residents of the place in
question are severally shown to have made the statement, a
general or common reputation is made out in proof. In like man-
ner a general or common reputation is made out where many
although not all are shown to have made individual assertions of
the fact. We are therefore of opinion that Harwood's testimony,
in connection with Bestor's, was admissible so far as this consider-
ation is concerned.

It has been said that evidence, to be admissible under this
exception to the rule against hearsay, must be evidence of the
general right and not of particular facts. Starkie on Evidence,
(10th Am. ed.) 49. 1 Phillips on Evidence, (6th ed.) 638. *The
Queen* v. *Bliss,* 7 A. & E. 550. But as is pointed out in Wigmore
on Evidence, § 1585, the more correct statement of this limitation
of the exception here in question is that the declarations to be
admissible must be declarations of the public or general right and
not of the particular exercise of it. It is no objection to Bestor's
and Harwood's testimony that the declarations testified to by
them dealt with the particular fact that the common right began
in a parol gift made by Robert Field, for whom the plaintiff town
was named.

The master, subject to the defendant's objection and exception,
"admitted evidence offered by the plaintiff from the valuation
lists of the town from 1875 down through all the years, showing
that the Town Common was noted on the books of the assessors as
town property and exempt under the law." The correctness of
his ruling admitting this evidence was submitted by the master to
the court.

We are of opinion that it was admissible. The defendant's case was that she and her husband had acquired title to the land in question by adverse possession. This adverse possession, according to her contention, began in 1884, when the adjoining land was conveyed to her husband, and lasted until the soldiers' monument was erected by the plaintiff town in December, 1907, a period of twenty-three years. The plaintiff's case was that it entered into possession of the locus under a parol gift made in 1814 and had held exclusive adverse possession of it ever since. It is stated in the plaintiff's brief that the defendant's husband died in 1907. If he had been alive at the time of the hearing before the master, he could have been put on the stand by the plaintiff and forced to testify to the fact (if it was a fact) that throughout the twenty-odd years during which under the defendant's contention he was in exclusive adverse possession of the locus as owner of the fee he never paid a tax upon it. He could have been forced to testify to this fact (if it was a fact) because the fact that he never paid a tax upon the locus during the time in question is some evidence that he was not in possession of it as owner during that time. This fact (that he never paid a tax on the locus throughout the twenty-odd years in question) is some evidence that he was not in possession as owner of it, because both in legal contemplation and in practice a person in possession of land as owner of it pays taxes on it. The plaintiff was not restricted to proving this evidentiary fact by direct testimony. It was open to it to prove it by circumstantial evidence as well as by direct testimony. In the case at bar the way in which the plaintiff was allowed to prove the evidentiary fact (that for the twenty-odd years during which the defendant contended that her predecessor in title was in exclusive adverse possession of the locus he never paid a tax on it) was by letting it produce the tax "valuation lists" for those years. It appeared from these "valuation lists" that no tax had been assessed upon the locus to any one during these twenty-odd years, and consequently that no tax could have been paid by the defendant's predecessor in title. The "valuation lists" are admissible, because if a parcel of land is not entered on them it is not taxed; and if not taxed, no tax on it could have been paid by the defendant's predecessor in title.

The admissibility of the valuation lists for nine years (from 1875

to 1884) before the beginning of the alleged possession by the defendant's predecessor in title stands on similar ground. The fact that no individual person paid a tax during the time or a portion of the time during which the plaintiff town claimed to have had adverse possession of the locus had some tendency to show that the possession of the town during that time was exclusive. For the converse proposition that the assessment to and payment of taxes by a person is some evidence that his possession is adverse, see *Whitman* v. *Shaw*, 166 Mass. 451, 461. Of course the locus being held by the town for a public common, and so for a public use, was not taxable; consequently the fact that it did not pay a tax was not material.

Relying upon *Proprietors of Jeffries Neck Pasture* v. *Ipswich*, 153 Mass. 42, the defendant has argued that "a town cannot without a corporate vote, acquire rights in land by virtue of continued acts of the selectmen and the surveyors of highways and of private inhabitants of the town." The finding of the master is "that the town of Enfield, its selectmen and citizens generally have laid claim to said land as the property of the town of Enfield ever since a time prior to the year 1814." This is a finding that there was a corporate action, if that is necessary. No objection was taken to the admission of the acts of the "selectmen and citizens generally."

The learned counsel for the defendant has not addressed his argument to the matters submitted to the court by the master's report and to the exceptions taken to the report, which were the only matters in addition to the plea to the jurisdiction open to him in the Superior Court and in this court. And he has argued several matters as to the correctness of the master's findings on the evidence which were not before the Superior Court and are not before us. We have considered all questions open under the report and the defendant's exceptions to it and argued here. The entry must be

*Decree affirmed.*