ELM SHANK & HEEL COMPANY vs. COMMONWEALTH
& others[1].

Essex. November 5, 1987. — January 7, 1988.

Present: HENNESSEY, C.J., WILKINS, LIACOS, NOLAN, & LYNCH, JJ.

*Redevelopment of Land. Statute,* Construction. *Words,* "Displaced person,"
"Actual direct loss."

In a proceeding under G. L. c. 79A, the Relocation Assistance Act, the
Department of Community Affairs correctly determined that a company's
fire losses to its personal property, incurred after it received a written
order to vacate its premises pursuant to the Commonwealth's taking the
real estate by eminent domain, were not reimbursible under G. L. c. 79A,
§ 7 (I) (A) (2), where the company, which had never moved from the
premises or removed its personal property, neither qualified as a "dis-
placed person" under the applicable regulation, 760 Code Mass. Regs.
§ 27.01 (7) (e), nor had suffered an "actual direct loss[] of tangible
personal property as a result of . . . discontinuing a business" as set
forth in the statute. [477-479]

CIVIL ACTION commenced in the Superior Court Department
on July 12, 1983.

The case was heard by *William Highgas, Jr.,* J., and was
reported by him to the Appeals Court. The Supreme Judicial
Court on its own initiative transferred the case from the Appeals
Court.

*Eugene X. Giroux* for the plaintiff.

*Irene Dwyer Emerson,* Special Assistant Attorney General,
for the Commonwealth & others.

---

[1] Board of Regional Community Colleges and North Shore Community
College.

LIACOS, J.  This case involves a claim for relocation benefits under the Relocation Assistance Act.[2] G. L. c. 79A (1986 ed.). The claim arose because of a taking, by eminent domain, of the plaintiff's, Elm Shank & Heel Company's, real property. G. L. c. 79 (1986 ed.). The parties stipulated to the following facts. On January 28, 1981, the plaintiff received notices from the Board of Regional Community Colleges (Board), acting on behalf of the Commonwealth, of an intent to take the plaintiff's property for the purpose of constructing a campus center for the North Shore Community College in Lynn. The plaintiff was informed that it might be eligible for relocation assistance under G. L. c. 79A, as a result of the proposed taking of its real estate. Further, the plaintiff was advised that the Cambridge Redevelopment Authority was engaged by the Board to provide such relocation assistance. See G. L. c. 79A, § 2.

On August 25, 1981, the plaintiff received notice that, by an order of taking recorded on August 17, 1981, the plaintiff's real property at 25 Marshall's Wharf in Lynn had been taken by eminent domain. The plaintiff was given 120 days to vacate the premises. The notice further advised that the plaintiff would be entitled to reimbursement for eligible moving expenses or direct losses of tangible personal property under the Relocation Assistance Act.[3]

In early October, 1981, the plaintiff notified Peter Sleeper of the Cambridge Redevelopment Authority that it had terminated business and had chosen to discontinue production rather than to relocate. In accordance with G. L. c. 79A, § 7 (I) (A) (2),[4] the plaintiff applied for reimbursement for direct losses to

---

[2]A brief statement of the purpose of this act is found in *Department of Community Affairs* v. *Massachusetts State College Bldg. Auth.*, 378 Mass. 418, 419-421 (1979).

[3]The bureau of relocation in the Department of Community Affairs, acting pursuant to the Relocation Assistance Act, G. L. c. 79A, § 12, has promulgated extensive regulations governing the procedures to be followed by various governmental agencies when there is a taking of real property.

[4]General Laws c. 79A, § 7, provides in part:

"I.  (A) Any agency or person specified under this act which acquires real property, or issues an order to vacate real property for purposes of rehabilitation,

its tangible personal property. Sleeper secured an appraisal of the value for continued use of the plaintiff's personal property ($1,116,387.65) and an estimate of the cost to move the plaintiff's personal property ($588,490). The plaintiff concurred in, and accepted, both of these figures.

Sleeper advised the plaintiff that he would arrange for, and conduct, a bona fide sale of the plaintiff's personal property as required by 760 Code Mass. Regs. § 27.09(20) (1986). Before the sale could be accomplished, a fire destroyed the plaintiff's personal property.[5] Thus, no sale took place. After the fire, Sleeper submitted the plaintiff's application for payment for direct loss of its tangible personal property and recommended payment to the plaintiff of $588,490. The Commonwealth submitted Sleeper's recommendation to the right of way bureau in the Department of Public Works. The right of way bureau, on March 25, 1982, and after reconsideration on June 11, 1982, denied the plaintiff's eligibility for payment and recommended denial of plaintiff's claim.[6]

The plaintiff appealed to the bureau of relocation in the Department of Community Affairs (DCA). After hearing, the DCA denied the plaintiff's claim. The plaintiff appealed to the Superior Court, G. L. c. 30A, § 14 (1986 ed.), and a judge re-

---

or demolition, or other improvement, shall make fair and reasonable relocation payments to displaced persons and businesses, upon proper application, for:

"....

"2. actual direct losses of tangible personal property *as a result of moving or discontinuing a business* or farm operation, but not to exceed an amount equal to the reasonable expenses that would have been required to relocate such property, as determined by the relocation agency" (emphasis supplied).

[5] There is no imputation of fault to the plaintiff or its agents or employees for this fire. The plaintiff recovered $200,000 from its insurers as a result of the loss of its personal property, caused by the fire.

[6] Title 760 Code Mass. Regs. § 27.09(20) governs payment procedures for "actual direct loss." The first two sentences of that regulation provide: "A business may receive a payment for any actual direct loss for any of its tangible personal property, including inventory or goods held for sale, *which it chooses not to relocate.* An effort to achieve a bona fide sale to dispose of the personal property is required, and the payment may not exceed the estimated reasonable expense of moving such property." (Emphasis supplied.)

ported the case, without decision, to the Appeals Court. Mass. R. Civ. P. 64, 365 Mass. 831 (1974). We transferred this case from the Appeals Court on our own motion. We order an entry of judgment in the Superior Court affirming the decision of the DCA.

The plaintiff contends that it became eligible for relocation payments under G. L. c. 79A, § 7 (I) (A), when the order of taking was recorded on August 21, 1981, or, if not then, certainly when the order to vacate the premises was received on August 25, 1981. At that point, argues the plaintiff, it became a "[d]isplaced person." General Laws c. 79A, § 1, defines a "displaced person" as "any person who . . . moves from real property, or moves his personal property from real property, as a result of the acquisition of such property or the receipt of a written order to vacate real property."

A basic rule of statutory construction is that, where the statutory language is clear, the words are given their plain and ordinary meaning. *Nationwide Mut. Ins. Co.* v. *Commissioner of Ins.*, 397 Mass. 416, 420 (1986), and cases cited. *Hashimi* v. *Kalil*, 388 Mass. 607, 609 (1983). The language in the statutory definition of "displaced person" is unambiguous. See *Department of Community Affairs* v. *Massachusetts State College Bldg. Auth.*, 378 Mass. 418, 427 (1979) ("we find the language in c. 79A clear and unambiguous"). To qualify as a "displaced person," one must move from real property, or move his personal property from real property, as a result of a written order to vacate. Here, the plaintiff received the written order to vacate but never moved from its real property or moved its personal property from the real property.[7]

---

[7] Even if we were to assume that the plaintiff is a "displaced person" under the statute, the defendants claim that the plaintiff cannot recover because the plaintiff did not follow the procedures set out in 760 Code Mass. Regs. § 27.00 (1986). Title 760 Code Mass. Regs. § 27.04(1) states in part: "Relocation payments authorized by M.G.L. c. 79A, s. 7 shall be made to all eligible displaced persons in accordance with the procedure set forth in the following sections." Section 27.09 sets forth the policies and requirements relating to relocation payments to businesses. If the moving expenses of a business are estimated to exceed $500, the business must obtain a bid from three reputable movers or contractors. 760 Code Mass.

The plaintiff argues, however, that, because its eligibility for relocation expenses became vested on the date of taking, the only determination remaining after August, 1981, was the amount due the plaintiff. The plaintiff contends that, although the fire interfered with that determination, 760 Code Mass. Regs. § 27.09(20)(b)(2) specifically provides for payment when a bona fide sale cannot be effected. The plaintiff asserts that, pursuant to 760 Code Mass. Regs. § 27.09(20)(b)(2), it should receive the lesser of the fair market value for continued use or the estimated moving expenses, both of which were ascertained by the Commonwealth's appraisals.

Before a business becomes eligible for any "actual direct loss" for its tangible personal property under 760 Code Mass. Regs. § 27.09(20), it must meet the basic eligibility requirements set forth in 760 Code Mass. Regs. § 27.04(3). 760 Code Mass. Regs. § 27.09(3). The basic eligibility requirement that the plaintiff fails to meet is that of being a displaced person as defined in 760 Code Mass. Regs. § 27.01(7)(e).[8]

---

Regs. § 27.09(18)(a). If the total cost of a move is estimated to be $2,000 or more, a sealed bid procedure must be followed. 760 Code Mass. Regs. § 27.09(18)(g). The plaintiff did not comply with either of these regulations. In the view we take, we need not decide the case on this basis.

[8]The definition of a "displaced person" in 760 Code Mass. Regs. § 27.01(7)(e) is, in essence, almost identical to the statutory definition in G. L. c. 79A, § 1. Subsection (7)(e) of 760 Code Mass. Regs. § 27.01 provides in part:

> "*Displaced person,* any person who, on or after the effective date of this act, moves from real property, or moves his personal property from real property, as a result of the acquisition of such property or the issuance of a written order to vacate real property by the public agency, for a program or project undertaken by an agency or person required to provide relocation assistance under this act, provided that the following shall not be considered 'displaced persons':
> > "1. An owner-occupant of a dwelling or an owner-occupant of a place of business who sells his property by negotiated sale to an entity established under the provisions of one hundred and twenty-one A, where such one hundred and twenty-one A entity is not empowered by eminent domain.
> > "2. An owner occupant of a dwelling or an owner occupant of a place of business who sells his property by negotiated sale, where such property is not scheduled for acquisition by a person or agency having the power of eminent domain."

Additionally, the plaintiff did not suffer an "actual direct loss[] of tangible personal property *as a result of . . . discontinuing a business*" (emphasis supplied). G. L. c. 79A, § 7 (I) (A) (2). The loss was caused by the fire which destroyed the personalty. In essence, the plaintiff is trying to make the Commonwealth the insurer for its fire loss. If no taking had occurred, and, if a fire had destroyed the plaintiff's personal property, the plaintiff would have incurred the loss and looked to its insurance company. It did so here.

The personal property, unlike the real estate, had not been taken. The taking of the real estate in which it was located did not make the Commonwealth the owner of the personalty or the insurer of it. The decision of the DCA that the plaintiff was not eligible for reimbursement is correct under the statute and the regulation. The case is remanded to the Superior Court for entry of a judgment affirming the decision of the DCA.

*So ordered.*