ARTHUR J. CHAMPIGNY & another[1] *vs.* COMMONWEALTH & others.[2]

Suffolk. December 7, 1995. - March 7, 1996.

Present: LIACOS, C.J., ABRAMS, O'CONNOR, GREANEY, & FRIED, JJ.

*Redevelopment of Land. Statute,* Construction. *Words, "Financial loss."*

A resolve enacted by the General Court in apparent response to the decision of this court in *Elm Shank & Heel Co.* v. *Commonwealth*, 401 Mass. 474 (1988), was construed in light of legislative intent so as to avoid a meaningless result; the company was under the terms of the enactment entitled to payment by the Commonwealth, with appropriate insurance set-off, for the loss of certain personal property. [251-253]

CIVIL ACTION commenced in the Superior Court Department on August 28, 1992.

The case was heard by *Gordon L. Doerfer*, J., on motions for summary judgment.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*James A. Sweeney*, Assistant Attorney General, for the defendants.

*Gregory C. Demakis* for the plaintiffs.

LIACOS, C.J. The plaintiffs are successors in interest to the Elm Shank & Heel Company, Inc. (Elm Shank), which in January, 1981, received notice that the Commonwealth would take real property from the company by eminent domain. After the taking and while Elm Shank was seeking relocation benefits for its tangible personal property located on the locus (see G. L. c. 79A, § 7 [I] [A] [1994 ed.]), the personal property was destroyed by fire. The agreed on relevant appraisal for this personal property was $588,490. This figure the Com-

---

[1]Edward W. Champigny.

[2]North Shore Community College (NSCC) and the Division of Capital Planning and Operations (DCPO). We refer to the defendants collectively as the Commonwealth.

monwealth refused to pay. In *Elm Shank & Heel Co.* v. *Commonwealth*, 401 Mass. 474 (1988), we held that the intervening fire, and not the actions of the Commonwealth, caused the company's losses of personal property. Therefore, we concluded the company was not entitled to relocation benefits under the relevant language of G. L. c. 79A, § 7 (I) (A). See generally *id.*

In the wake of that decision, the General Court enacted Res. 1990, c. 3, entitled "Resolve in favor of the Elm Shank and Heel Company, Inc.," the relevant portion of which we reprint in the margin.[3] When the plaintiffs asserted that the resolve entitled them to compensation, the Commonwealth again refused to pay. This suit followed, and a judge in the Superior Court, on cross motions for summary judgment, ordered NSCC and DCPO to "conduct an evaluation of the financial issues involved within the parameters outlined in the resolve . . . in order to comply with the resolve's direction to pay."

The Commonwealth appealed. We transferred the appeal here on our own motion. The Commonwealth now argues for the first time that we must construe the resolve to avoid payment because such payment would not be for a public purpose and would therefore violate art. 10 of the Declaration of Rights of the Massachusetts Constitution. Neither that argument, nor any related claim that the resolve violates art. 30 of the Declaration of Rights, was made to the trial court. Therefore, we will not consider these arguments. See *Tamerlane Corp.* v. *Warwick Ins. Co.*, 412 Mass. 486, 491 (1992). See also *Petition for Revocation of a Judgment for Adoption of a Minor*, 393 Mass. 556, 563 n.12 (1984) (constitutional claims).

---

[3]"RESOLVED, That for the purpose of discharging a moral obligation, and notwithstanding the provisions of any general or special law to the contrary, the commonwealth is hereby authorized and directed to pay to Arthur J. and Edward W. Champigney [*sic*], successors in interest to Elm Shank and Heel Company, Inc., a sum not to exceed three hundred and eighty-eight thousand four hundred and fifty dollars, for financial loss suffered due to discontinuance of the Elm Shank and Heel Company, Inc. formerly located in the city of Lynn, as a result of a taking by the commonwealth for the construction of North Shore Community College. The exact amount, within the parameters outlined above, shall be determined based on an evaluation by the division of capital planning and operations in conjunction with the North Shore Community College of the financial issues involved."

We turn to the Commonwealth's main argument which is based on the language of the resolve itself. The Commonwealth contends that the resolve commands NSCC and DCPO to pay only an amount determined after they "evaluat[e] . . . the financial issues" to determine the "financial loss suffered . . . as a result of a taking." The intervening fire allegedly precluded any financial loss due to a taking. Hence no payment would be due.

We construe a statute in accord with "the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated," *Telesetsky* v. *Wight*, 395 Mass. 868, 872-873 (1985), quoting *Commonwealth* v. *Galvin*, 388 Mass. 326-328 (1983), and to avoid imputing a "[b]arrenness of accomplishment," *Plymouth County Retirement Ass'n* v. *Commissioner of Pub. Employee Retirement*, 410 Mass. 307, 312 (1991), quoting *Selectmen of Topsfield* v. *State Racing Comm'n*, 324 Mass. 309, 314 (1949). After our decision under the existing statutes in *Elm Shank & Heel Co.*, *supra*, the company was entitled to no payment for the lost personal property. The result of the Commonwealth's reading of the subsequent resolve would yield the same outcome. The legislative effort would have had no practical effect. We are not inclined to read a statute in such manner. "We will not adopt a literal construction of a statute if the consequences of such construction are absurd or unreasonable. We assume the Legislature intended to act reasonably." *Attorney Gen.* v. *School Comm. of Essex*, 387 Mass. 326, 336 (1982). "[W]hen a literal reading of a statute would be inconsistent with legislative intent, we look beyond the words of the statute." *Id.* "The object of all statutory construction is to ascertain the true intent of the Legislature from the words used. If a liberal, even if not literally exact, interpretation of certain words is necessary to accomplish the purpose indicated by the words as a whole, such interpretation is to be adopted rather than one which will defeat that purpose." *Lehan* v. *North Main St. Garage*, 212 Mass. 547, 550 (1942).

We note one telling difference between the language of the statute we interpreted in *Elm Shank & Heel Co., supra,* and the resolve. General Laws c. 79A, § 7 (I) (A) (2), provides, in part, for payment for "actual direct losses." The resolve instead provides for payment for "financial loss." This change, coupled with our unwillingness to think that the Legislature intended no practical effect, indicates that the Legislature sought to ameliorate the result reached in *Elm Shank & Heel Co., supra* at 479, under the language of G. L. c. 79A, § 7 (I) (A). This conclusion is bolstered when we take note of the title of the resolve, which plainly intends some positive result "in favor of" the plaintiffs' predecessor in interest. See *American Family Life Assurance Co.* v. *Commissioner of Ins.*, 388 Mass. 468, 474, cert. denied sub nom. *American Family Life Assurance Co.* v. *Hiam,* 464 U.S. 850 (1983).

The Commonwealth offers a final argument, deriving from the traditional interpretative canon that each provision of a statute is given some meaning. E.g., *United States Jaycees* v. *Massachusetts Comm'n Against Discrimination,* 391 Mass. 594, 602 (1984). The legislative directive that the compensation's "exact amount, within the parameters outlined above" be determined "based on an evaluation . . . of the financial issues involved" allegedly demonstrates that some further calculation (within the $388,450 cap) must be made by DCPO and NSCC. The Commonwealth reasons that the only possible calculation that needs to be done is of the financial loss suffered as a result of the taking. Hence, it argues, the Commonwealth's evaluation could determine that all loss resulted from the fire, and not from a taking.

The clear intent of the resolve is otherwise. We discern a different meaning when we place the resolve in more natural lighting — illuminating it with the *Elm Shank & Heel Co.* decision. See, e.g., *Kszepka's Case,* 408 Mass. 843, 847 (1990) (General Court presumed to know existing law and opinions of judiciary). In *Elm Shank & Heel Co.* v. *Commonwealth,* 401 Mass. 474 (1988), the company sought to recover the entire estimated cost to move the business (which by statute caps the recovery for loss). The resolve calls for evaluation of the financial *issues involved,* not of the financial *loss.* Different

words often do mean different things. Thus the former phrase refers to any appropriate set-off to account for insurance proceeds.

For these reasons, the judgment of the Superior Court is affirmed.

*So ordered.*