Bohn, J.
INTRODUCTION
On May 8, 2003, this case was before the Court for hearing on the motion of Amesbuiy Sports Park, Inc. for summary judgment. In support of its motion, the defendant argues that two provisions of the Massachusetts Ski Safety Act, G.L.c. 143, §§71N and 710, relieve it from liability for injuries incurred by Rosalind Burden at its snow tubing facility in Amesbuiy, Massachusetts. Joanne Burden, individually and as parent and next of friend of Rosalind Burden, opposes the motion, arguing that G.L.c. 143, §§71N and 710 do not protect the defendant from liability in this case because her daughter, Rosalind, was not injured in a skiing accident; and, because the plain language of the statute relieves only ski operators from injuries to skiers arising from the risks of skiing.
For the following reasons, the defendant’s motion will be DENIED.
BACKGROUND
The material undisputed facts, viewed in the light most favorable to the plaintiff, are as follows.
Amesbuiy Sports Park was established in 1992. It was the first facility in the United States to offer snow tubing exclusively. The facility consists of four mechanically operated wire rope tows. From the bottom of the hill, Tows A and B are located on the right looking uphill, and Tows C and D are located on the left. Each of the wire rope tows have hooks attached to them which the defendant’s employees monitor at the top and bottom of the hill. As the patron sits on his or her snow tube, the defendant’s employees connect the hook on the wire to handles on the snow tube. The lift then slowly pulls the *745 patron up the hill where the employee detaches the tube from the lift, and the snow-tuber is free to descend. Employees at the top and at the bottom of the hill monitor the tuber’s run and watch to ensure that the lanes are clear.[1]
To operate the wire rope tows, the defendant must obtain a license from the Recreational Tramway Board for each of the four rope tows. The defendant was licensed to operate the rope tows in the 1998-1999 season, the 2000-2001 season and the 2001-2002 season. The licensing application was sent to all ski areas by Guy Liccardi, the director of regulated activities for the Recreational Tramway Board.
The Amesbuiy Sports Park has a total of ten separate snow tubing runs. From the bottom of the mountain looking uphill, lanes 1-5 are on the right and the elevation of these lanes is approximately ten stories high. Lanes 6-10 are located on the left side of the hill and are approximately eight stories high. The lanes are 300-400 yards long. Periodically, the lanes are groomed with a grooming machine which gives a concave shape to each lane.
On or about February 17, 1998, Rosalind Burden, who was eleven years old at the time, purchased a ticket to snow tube from 3:00 p.m. to 6:00 p.m. at Amesbuiy Sports Park. At approximately 5:15 p.m., Rosalind was descending a designated run located on the right side of the hill. As Rosalind approached the bottom of the run, her tube struck another patron who had completed his run but had not yet removed himself from the path of the descending Rosalind. The accident occurred at the end of the trail but still on the downward slope. As a result of the accident, Rosalind and. her mother claim that she sustained physical and emotional injuries. Additionally, Rosalind’s mother claims that Rosalind suffered emotional distress and loss of consortium as a result of her daughter’s injuries.[2]
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating that there is no triable issue of material fact and that it is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts to establish the existence of a genuine issue of material fact. Pederson v. Time, Inc., 404 Mass. at 17.
As noted in the case of McHerron v. Jiminy Peak, Inc., 422 Mass. 678 (1996), General Laws c. 143, §§71H-71S was enacted to define and restrict the responsibility and liability of ski operators to skiers injured by risk inherent in the sport of skiing while still ensuring skier safety. Id. at 679, citing Atkins v. Jiminey Peak, Inc., 401 Mass. 81, 84 (1987). And see Tilley v. Brodie Mountain Ski Area, Inc., 412 Mass. 1009 (1992) (statute embodies the Legislature’s judgment that it would be both physically impossible and economically intolerable to require ski areas to guard against and assume responsibilities for the negligence of their patrons); Michael J. Farrow, Ski Operators and SkiersResponsibility and Liability, 14 New Eng.L.Rev. 260, 271 (1978). When the statute was enacted in the late 1970s, however, snow tubing was a novel sport and, thus, was not addressed explicitly by the statute. The question for today, therefore, is whether snow tubing, if not addressed explicitly in G.L.c. 143, §§71H-71S, should be included within the protection of the statute by implication. In the opinion of the undersigned justice, it should not.
In interpreting a statute, a court must begin by looking at the plain meaning of the words used in its construction; that is, a statute is to be interpreted “according to the intent of the Legislature, as evidenced by the language used, and considering the purposes and remedies intended to be advanced.” Glasser v. Director of the Div. of Employment Sec., 393 Mass. 574, 577 (1984). And see Brittle v. City of Boston, 439 Mass. 580 (2003), Cowin dissenting at p.593; Commonwealth v. Twombly, 435 Mass. 440 (2001) (terms of a statute are to be read according to their ordinary and approved usage). In the present case, G.L.c. 143, §71N provides that “ski operators shall not be liable for damages to person or property, while skiing, which arise out the risks inherent in the sport of skiing.” (Emphasis added.)[3] It appears, therfore, that for the protection of §7IN to take effect, three components must be present. First, the entity seeking the statute’s protection must be a ski operator. Second, the injury must occur while the injured party is skiing. Third, the injuiy must arise from an accident inherent in the sport of skiing. In the present case, only the first of the three elements is, arguably, met. In G.L.c. 143, §71J, a ski area operator is defined as the owner or operator of a ski area. Arguably, the Amesbuiy Sports Park, Inc. is an owner of an area that, conceivably, could be used for skiing. That being the case, it could fall under the definition of a ski area operator. The same cannot be said of the remaining two elements.
In the same statutoiy provision in which is found the definition of a ski area operator, a skier is defined as a person utilizing the ski area under the control of a ski area operator for the purpose of skiing; and, although this definition is circular in construct, it is clear that the use of a snow-covered slope for snow tubing is not the same as the use of *746 a snow-covered slope for skiing. Furthermore, it is clear that an injury which arises from risks inherent in the sport of skiing are not the same as risks inherent in the act of snow tubing. In skiing, the skier has at least the opportunity to control her descent down the hill, bringing to bear whatever level of experience and skill she might possess. Indeed, the point of the Ski Safety Act in transferring responsibility for a skiing accidentfromthe owner to the skierand the intent of the Legislature in this regardis predicted on the skier’s acknowledgment of his or her skill level and the application of that skill in relation to other skiers. Snow tubing, on the other hand, requires no skill on the part of the tuber but, rather, simply requires the tuber to sit passively on the conveyance and ride down the hill, relying on the design and maintenance of the hill, and on the diligence of the facility’s employees, for her safety.
In support of its position that the Ski Safety Act encompasses snow tubing, the defendant argues that statutes in other states governing the liability of ski area operators have been interpreted to incorporate tubing; however, those statutes can be distinguished from the Massachusetts Act. In Alaska, for example, the statute has been written to include “tobogganers and anyone” using any of the facilities of a ski area, including ski slopes and trails. Alaska Stat. Sec. 05.45.200(8) (emphasis added). In Colorado, the statute is written to include “anyone using the ski area for the purpose of sliding downhill on snow or ice on, among other things, a toboggan or any device. Colo. Rev. Stat. §33-44-103(8) (emphasis added). In New Hampshire, the statute includes any person ’’utilizing the ski slopes, trails, jumps or other areas within a ski area." N.H. Rev. Stat. Ann. §225-A:2(II). Conversely, the Massachusetts Statute is drawn more tightly. As noted above, where applicable, G.L.c. 143, §711 defines a skier as “any person utilizing the ski area under control of a ski area operator for the purpose of skiing, . . . including riders [of a tramway] during a non-skiing season.” While the statute does not define “skiing,” the absence of such a definition, and the fact that the language of M.G.L.c. 143, §711 limits the definition of skier to “any person utilizing the ski area ... for the purpose of skiing” leads this Court to find the statute was not intended by the Legislature to include a non-skiing sport like snow tubing. If the Legislature intended to include such activities in the protections afforded owners and operators of skiing facilities, it could have done so through language providing such inclusion. It has not done so.
Because the act of snow tubing is distinguishable from the sport of skiing and because the General Court has not specifically included the act of snow tubing in the state statute which limits liability for accidents involving skiers, the defendant is not entitled to summary judgment on the basis that the operator of a snow tubing facility is exempt from liability by way of G.L.c. 143, §71N and §710. There remain genuine issues of material fact concerning the duty owed by the owner or operator of a snow tubing facility to asnowtuber and whether, in this case, there was a violation of that duty. For that reason, the defendant’s motion for summary judgment must be denied.
ORDER
For the foregoing reasons, it is hereby ORDERED that the defendant’s motion for summary judgment is DENIED.

According to the deposition testimony of Julie Brooks, the outdoor supervisor for Ameshuiy at the time of the accident, a transcript of which is attached to plaintiffs opposition as Exhibit 1, Amesbuiy employed monitors at the top and bottom of the hill “to control the flow of traffic and avoid collisions.” According to Brooks, one of the responsibilities of the monitors was to stagger the runs “so that a tuber would not proceed until the previous tuber in the same run had cleared out of the way.” Deposition transcript, pgs. 16-18.
Similarly, according to the deposition testimony of Bruce Warner, currently the manager of Amesbuiy Sports Park, a transcript of which is attached to plaintiffs opposition as Exhibit 2, “Monitors at the top of the run were required to ensure that the lane was clear before sending a person down while monitors at the bottom of the runs were responsible for preventing people from walking across the lane area.” Deposition transcript, p. 27.

The record does not disclose whether Rosalind’s mother witnessed Rosalind’s accident. That information would be helpful in determining whether Joanne Burden’s claim for emotional distress has legal merit. See, e.g., Krasnecky v. Meffen, 56 Mass.App.Ct. 418, 422 (2002); Migliori v. Airborne Freight Corp., 426 Mass. 629, 633 (1998) (among the pragmatic judgments applied to claims of emotional distress are those imposing requirements of spatial and temporal proximity upon plaintiffs). That issue is not raised in the present motion, however, in that it seeks a more global dismissal of the complaint based on the protections of G.L.c. 143, §§71H-71S.

Where relevant, G.L.c. 143, §71N(6) provides as follows: “[S)ki area operators shall not be liable for damages to person or property, while skiing, which arise out of the risks inherit in the sport of skiing.”
Similiarly, where relevant, G.L.c. 143, §710 provides that: “A skier skiing down hill shall have the duty to avoid any collision with any other skier, person or object on the hill below him, and, expect as otherwise provided in this chapter, the responsibility for collisions by any skier with any other skier or person shall be solely that of the skier with any other skier or person involved and not that of the operator, and the responsibility for the collision with any obstruction, man-made or otherwise, shall be solely that of the skier and not that of the operator, provided that such obstruction is properly marked pursuant to the regulations promulgated by the board.”