SANDERS, Janet L., J.
In this action the plaintiff, Jillian Rich, claims that the defendants, Tamarack Ski Corporation, Inc., d/b/a Bousquet Skiing Resort & Family Fun Center (“Bousquet”) and Christopher Dinan, negligently caused her to fall and sustain injuries while she was snowboarding. The defendants now move for summary judgment as to all claims on the grounds that, under G.L.c. 143 §§71H-71S, they are not liable as a matter of law. This Court agrees, and therefore concludes that the defendants’ motion must be Allowed.
BACKGROUND
The facts, viewed in the light most favorable to the non-moving party, are as follows. On February 13, 2006, Rich went to Bousquet, a ski center, to take part in a snowboarding class. After assembling, the class rode the ski lift to the top of a trail called “Drifter.” Their instructor, defendant Dinan, told the class that they would all take a run to warm up and meet at the bottom of the trail before he began instructing them. The group set off and each member headed down the trail at his or her own pace.
As Rich came around a bend in the trail, she saw that Dinan was stopped on the far left side of the trail below her. To the left of Dinan, the trail ended and a wooded area began. To the right, the trail was wide open. Rich, who had been taking lessons since November 2005, was not yet adept at making right-hand turns on her snowboard, however. As a result, Rich continued on, crashing into Dinan and sustaining injury.
DISCUSSION
Resolution of the summary judgment motion turns on this Court’s interpretation of the G.L.c. 143, §§71H-7IS (the “Statute”). If the statute is read to embrace snowboarding, then it necessarily follows that the defendants cannot be held liable for any injuries that the plaintiff suffered. That is because the Statute specifically absolves a ski area operator from any responsibility for a collision where the plaintiff skier strikes a person or object on the hill below her. Although there is no appellate decision directly on point, this Court concludes that snowboarding falls within the definition of skiing, with the result that summary judgment for the defendants is appropriate.
In interpreting the Statute, this Court applies certain well established rules of statutory construction. This Court’s objective is to determine and effectuate the intent of the legislature in the situation presented. DiGiacomo v. Metropolitan Prop. & Cas. Ins. Co., 66 Mass.App.Ct. 343, 346 (2006). To achieve that objective, this Court looks to the statutory language, and ascertains its meaning, keeping in mind the reasons why the statute was enacted, the “mischief or imperfection to be remedied, and the main object to be accomplished.” BloomSouth Flooring Corp. v. Boys’ and Girls’ Club of Taunton, Inc., 440 Mass. 618, 622 (2003), quoting Hanlon v. Rollins, 286 Mass. 444, 447 (1934). “Courts must ascertain the intent of a statute from all its parts and from the subject matter to which it relates, and must interpret the statute so as to render the legislation effective, consonant with sound *449 reason and common sense.” DiGiacomo, 66 Mass.App.Ct. at 346, citing Champigny v. Commonwealth, 422 Mass. 249, 251 (1996).
This Court’s analysis begins with the language of the Statute itself. Section 711 sets forth the definitions of the terms the Statute contains. That section defines a skier as “any person utilizing the ski area under control of a ski area operator for the purpose of skiing, whether or not that person is a passenger on a recreational tramway, including riders during a non-skiing season.” “Ski area” is defined as “all the slopes and trails under the control of the ski area operator.” A ski slope or trail is “an area designed by the person or organization having operational responsibility for the ski area . . . for use by the public in furtherance of the sport of skiing.” A “ski operator” includes not only the owner or operator of the ski area but also its “employees, officers, agents, or delegated representatives . . ."
It is undisputed in this case that the defendant Bouquet is a ski area operator and that the defendant Dinan was an employee of Bousquet acting in the scope of his employment. It is also undisputed that, when the accident occurred, the plaintiff was on a ski trail. Although the plaintiff was not strictly a skier, the legislature chose to define a “skier” to include those who ride the tramways on the ski slopes even when there is no skiing available, thus suggesting an intent for the term to be read broadly. It is true that the Statute makes no express reference to snowboarding, but that is no surprise: When the Statute was last amended in 1978, snowboarding was a novel sport.
In addition to examining the statutory language, this Court takes into account the objectives of the Statute. It was enacted in response to the concern of ski area owners that liability for claims of negligence would drive up the costs of their insurance (thus imposing an onerous financial burden on a business which is particularly vulnerable) or make insurance unavailable altogether. See Michael J. Farrow, Note, Ski Operators and Skiers — Responsibility and Liability, 14 New Eng. L.R. 260, 271 n.79 (1978). To limit those costs and in recognition that skiing is itself inherently risky, the legislature sought both to define the responsibility and to restrict the liability of ski operators vis á vis those who used the ski slopes. See McHerron v. Jiminy Peak, Inc., 422 Mass. 678, 679 (1996). To that end, Section 710 requires a skier to “maintain control of his speed and course at all times” “ and imposes a duty on the skier to ’’avoid collision with any other skier, person or object on the hill below him." It goes on to state that the “responsibility for collisions by any skier with any other skier or person shall be solely that of the skier or person involved and not that of the operator . . .” Clearly, this suggests a strong desire on the legislature’s part to shield the ski operator from a claim of negligence which arises from a collision between those who use its ski slopes.
Reading the statute as a whole in light of the purpose that the legislature sought to achieve, this Court has no difficulty in concluding that snowboarding falls within the definition of “skiing.” Although they are not strictly the same, the two sports bear substantial similarities. Both activities occur on the same trails. Both snowboarders and skiers used the same ski lifts and pay the same ticket price. Both activities are inherently risky. The major difference between them is that a snowboarder uses a single wide board on which both feet are planted, whereas a skier uses two narrow boards worn on each foot. That is a difference without any significance in the context of this case, however. Although that may change the way in which the user maneuvers himself down the hill, it does not necessarily affect the level of control that the user exercises over his or her direction and speed. Thus, it is not unreasonable to require snowboarders, like skiers, to maintain control and to avoid colliding with others who are using the same trail.
This case is therefore quite different from Burden v. Amesbury Sports Park, Inc., Civil Action No. 2001-0180 (Essex Super. Ct. July 11, 2003) (Bohn, J.) [16 Mass. L. Rptr. 744]. There, the court held that a person using a snow tube was not a “skier” for purposes of the Statute. Unlike snowboarding, however, a person on a snow tube has little no control over the speed or direction of his descent. The activity must therefore occur in areas specially designed to regulate the number of snow tubes on the slope and the manner in which the snow tube travels down the hill. Precisely because there is no skill involved in engaging in the activity, it is reasonable to impose responsibility for patron safety on those who operate the snowtubing facility. Certainly, the same cannot be said for snowboarding.
This Court’s conclusion that the Statute applies to snowboarding makes particularly good sense given the growing popularity of the sport. Nowadays, ski areas are more often dominated by snow boarders; if they could sue for collisions occurring on the ski trails, insurance costs to ski operators would increase substantially, in direct derogation of the legislature’s intent. In those states with statutes similar to the Statute here, courts have reached the same conclusion as this Court and held that the two sports should be regarded as the same when it comes to protecting the ski operator from lawsuits arising from collision on the slopes. See e.g. Cecere v. Loon Mountain Recreation Corp., 923 A.2d 198, 203 (N.H. 2007) (holding that a person using a snowboard is a skier within the meaning of the New Hampshire statute); Shukaski v. Indian Head Mountain Resort, 166 F.3d 848, 851 (6th Cir. 1999) (same, applying Michigan law). Indeed, to impose more responsibiliiy for his or her own safely on a skier than on a snowboarder does not accord with common sense.
*450 If the Statute is construed to embrace snowboarding, then it necessarily follows that neither Dinan nor Bousquet can be held liable for the collision which gave rise to this case. As discussed above, Section 710 places the duty squarely on the skier (here, the plaintiff) to avoid collisions with those on the hill below her. Here, it is undisputed that Dinan was downhill from Rich, that she saw him at the side of trail, and that she ran into him because she was not adept at making the turn necessary to avoid him. This is precisely the situation that the legislature intended to cover when it passed the Statute. A ski area operator (which necessarily includes not only Bousquet but also its employee Dinan) has no responsibility under the Statute to protect against such collisions. Without a legal duty to avoid the accident, the defendants cannot be negligent as a matter of law. Compare Tilley v. Brodie Mountain Ski Area, Inc., 412 Mass. 1009, 1010 (1992) (holding that common-law negligence claim may still lie where the plaintiff was struck from behind from a member of the ski patrol who was above her on the ski slope).
CONCLUSION AND ORDER
For the foregoing reasons, the defendants’ Motion for Summary Judgment is ALLOWED and it is hereby ORDERED that the Complaint be DISMISSED, with prejudice.