FRANCIS J. FITZGERALD *vs.* BOARD OF REGISTRATION IN
VETERINARY MEDICINE.

Suffolk. February 3, 1987. — May 13, 1987.

Present: WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Veterinarians. Board of Registration in Veterinary Medicine. Medical Malpractice,* Standard of care. *Administrative Law,* Substantial evidence, Judicial review.

In proceedings before a hearing officer arising out of a matter referred to her by the Board of Registration in Veterinary Medicine concerning a veterinarian's alleged improper treatment of an injured dog, the hearing officer, in construing and applying the terms "malpractice," "gross misconduct," and "conduct reflecting unfavorably on the profession of veterinary medicine," as those terms are used in G. L. c. 112, §§ 59 and 61, correctly looked to the general standards of ethics and practice which are adhered to in the profession of veterinary medicine. [904-905]

A decision recommended by a hearing officer and adopted by the Board of Registration in Veterinary Medicine concluding as matter of law that a veterinarian, in his treatment of an injured dog, was guilty of conduct reflecting unfavorably on the profession of veterinary medicine, of malpractice, and of gross misconduct in the practice of veterinary medicine was supported by substantial evidence, including evidence that the definitive X-ray photographs of the animal should have been obtained earlier; that reasonably prudent treatment for the dog's injuries was euthanasia at an earlier time; that he deliberately gave the dog's owners misleading information concerning the seriousness of the dog's condition; that he destroyed the X-rays soon after the accident and kept no detailed records of the animal's treatment; and that the dog had suffered "for much too long a time" before euthanasia was carried out. [905-907]

A suspension of a veterinarian's license for two years as a result of his being found guilty of conduct reflecting unfavorably on the profession of veterinary medicine, of malpractice, and of gross misconduct in the practice of veterinary medicine arising from his treatment of a dog for injuries sustained when hit by an automobile was not unreasonable or excessive. [907-908]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on May 8, 1986.

The case was reported by *Nolan, J.*

*Joseph F. Lyons* (*Glenn M. Shriberg* with him) for the plaintiff.

*Suzanne E. Durrell,* Assistant Attorney General, for the Board of Registration in Veterinary Medicine.

LYNCH, J. The plaintiff, Francis J. Fitzgerald, D.V.M., petitions for review of a decision of the Board of Registration in Veterinary Medicine (board), suspending his license to practice veterinary medicine for two years. A single justice reserved and reported the case and stayed the suspension pending final disposition of the appeal or until further order of the court.[1] We affirm the decision of the board.

The board informed Dr. Fitzgerald that it had received a complaint from Cheryl A. Dunbar, concerning the plaintiff's treatment of Dunbar's dog. Based on its review of the complaint and the plaintiff's response, the board issued an order to show cause on September 28, 1984, alleging violations of G. L. c. 112, § 59 (1984 ed.), for conduct reflecting unfavorably on the profession of veterinary medicine, and G. L. c. 112, § 61 (1984 ed.), for deceit, malpractice, or gross misconduct in the practice of veterinary medicine. The plaintiff answered and the board referred the matter for hearing by an administrative magistrate of the division of administrative law appeals. After reviewing the magistrate's recommended decision and the plaintiff's objections, the board adopted the recommended decision without exception and found the plaintiff guilty of conduct reflecting unfavorably on the profession of veterinary medicine, of malpractice, and of gross misconduct in the practice of veterinary medicine.

We summarize the facts as found by the magistrate and adopted by the board. The plaintiff operates an animal clinic

---

[1] The board argues that the single justice exceeded his authority in imposing a stay of execution of the board's judgment. We need not address the board's argument as our decision renders the issue moot. See *Keigan* v. *Board of Registration in Medicine, ante* 719, 720 n.1 (1987).

in Fitchburg. He is assisted in his clinical practice by John Donnellan, D.V.M., and Carol Stacy, who is also the Fitchburg animal inspector.

On Sunday, April 8, 1984, Cheryl and David Dunbar brought their Siberian Husky, Kushka, to the plaintiff's clinic after Kushka had been hit by a car. Dr. Donnellan, who was on duty in the absence of Dr. Fitzgerald, treated the dog for severe shock and trauma to the right rear leg and pelvic area. During the course of the examination, Dr. Donnellan found no movement in the dog's rear quarters. He informed the Dunbars that the dog had suffered possible internal injuries and a possible fractured pelvis and upper femur injury. Dr. Donnellan emphasized to the Dunbars that Kushka appeared to have a bad rear area injury and told them that the plaintiff would be in the next day to take over the dog's care.

Prior to leaving Dr. Fitzgerald's clinic, Stacy noticed that Cheryl Dunbar had sustained a small cut on her index finger. Dunbar explained that the finger had been grazed by Kushka's teeth in the course of moving the dog onto a blanket immediately after the accident, and Stacy suggested she see a physician. Dunbar went to the Burbank Hospital emergency room where she informed the attending physician that the cut was from Kushka. The hospital reported to the Fitchburg board of health that Dunbar had received a dog bite. Stacy, as the Fitchburg animal inspector, imposed an order of quarantine on Kushka to determine whether the dog had rabies. The quarantine period is ten days; if the dog fails to survive the quarantine period, the head must be removed for analysis. Dr. Fitzgerald was aware that the Dunbars were never notified and were not aware of the quarantine until after the quarantine period ended.

On April 9, Cheryl Dunbar telephoned Dr. Fitzgerald concerning Kushka's condition. The plaintiff told her that Kushka had a broken leg and could be released at the end of the week. Dunbar telephoned the plaintiff's clinic repeatedly throughout the week. In the course of these conversations the plaintiff or his assistant discussed only a broken leg, and told her not to visit. During this time the plaintiff never mentioned that Kushka had no movement in his rear section, that Kushka was regularly

sedated and catherized, or that he suspected (as he had from his initial examination) that Kushka had a spinal cord injury and pelvic fracture. Nor did the plaintiff tell Dunbar that four to six days after Kushka's admission he had taken X-rays which confirmed his suspicion of pelvic and spinal cord injuries.[2]

The Dunbars attempted to visit Kushka on April 10, but were refused by the plaintiff. Approximately nine days after Kushka's admission, Cheryl Dunbar appeared at the plaintiff's clinic with her son and was allowed to see the dog. On April 18, the plaintiff transported Kushka to New England Animal Medical Center for X-rays, which revealed severe injury to the spinal column. That evening the plaintiff telephoned Cheryl Dunbar and told her that Kushka should be put to sleep. She arranged for a second opinion from her regular veterinarian who, after examination, concurred in the recommendation of euthanasia. After the Dunbars spent a brief period with Kushka, the dog was put to sleep.

1. *Applicable standards.* The board, along with other boards of registration, is authorized by G. L. c. 112, § 61, to "suspend, revoke or cancel any certificate, registration, license or authority issued by it, if it appears to the board that the holder . . . is guilty of . . . malpractice [or] gross misconduct in the practice of his profession." In addition, the board is specifically authorized by G. L. c. 112, § 59, to "revoke or suspend . . . the license of any person to practice veterinary medicine in the commonwealth" for certain enumerated causes, including "[c]onduct reflecting unfavorably on the profession of veterinary medicine."

In construing and applying the terms "malpractice," "gross misconduct," and "conduct reflecting unfavorably on the profession of veterinary medicine," the magistrate correctly looked to the "general standards of ethics and practice which are

---

[2] Although Dr. Fitzgerald testified that these X-rays confirmed his impression of spinal cord and pelvic injuries, he conceded that it was still necessary to send the dog for more definitive X-rays to obtain a more complete indication of the dog's condition and prognosis because the X-rays lacked detail and were "inconclusive." The plaintiff made no record of the X-rays and later destroyed them as was his routine practice.

adhered to in [the] profession." *Willoughby* v. *Veterinary Examiners,* 82 N.M. 443, 445 (1971). Although none of the veterinarians who testified at the hearing was expressly qualified as an expert, there was evidence as to reasonable standards of practice required in the practice of veterinary medicine.[3] *Lies* v. *Ohio Veterinary Medical Bd.,* 2 Ohio App. 3d 204, 211-212 (1981). Cf. *Arthurs* v. *Board of Registration in Medicine,* 383 Mass. 299, 309-310 (1981).

The particular forms of misconduct that Dr. Fitzgerald was found to have committed, e.g., conduct related to the course of treatment, fall well within the broad definitions of malpractice and professional misconduct. See *Gurry* v. *Board of Pub. Accountancy,* 394 Mass. 118, 121-125 (1985); *Forziati* v. *Board of Registration in Medicine,* 333 Mass. 125, 129 (1955). Misinforming a patient (or, as here, an animal's owner) of the circumstances of the case has also been recognized as constituting malpractice or professional misconduct. See, e.g., *Willoughby* v. *Veterinary Examiners, supra* (upholding suspension of veterinary license on the ground, inter alia, of failure to inform owner of animal's actual condition). Cf. *Harnish* v. *Children's Hosp. Medical Center,* 387 Mass. 152, 154-155 (1982) (physician's failure to disclose sufficient information constitutes professional misconduct). Inadequate recordkeeping is another basis which has been held to constitute professional misconduct warranting disciplinary action. *Willoughby* v. *Veterinary Examiners, supra.* See generally Soave & Crawford, Veterinary Medicine and the Law 114 (1981).

2. *Sufficiency of evidence.* The plaintiff argues that the board erred in its conclusion and that the evidence does not support the board's action.[4] In assessing the sufficiency of the evidence

___

[3] Three veterinarians other than Dr. Fitzgerald testified at the hearing before the magistrate and a letter from a fourth veterinarian was introduced as an exhibit.

[4] Additionally, the plaintiff contends on appeal that that portion of the board's order to show cause which charged "overall improper handling of the case" was so vague and ambiguous that he could not respond to it in a "meaningful manner." There is no evidence in the record that this claim

underlying the board's decision, we apply the "substantial evidence" standard contained in G. L. c. 30A, § 14 (7) (1984 ed.). G. L. c. 112, § 64 (1984 ed.). "Substantial evidence" is defined in G. L. c. 30A, § 1 (6) (1984 ed.), as "such evidence as a reasonable mind might accept as adequate to support a conclusion." In *Arthurs* v. *Board of Registration in Medicine,* 383 Mass. 299, 304 (1981), we described "the limited nature of our review under the substantial evidence standard." "While we must consider the entire record, and must take into account whatever in the record detracts from the weight of the agency's opinion . . . as long as there is substantial evidence to support the findings of the agency, we will not substitute our views as to the facts" (citations omitted). *Id.* See *Langlitz* v. *Board of Registration of Chiropractors,* 396 Mass. 374, 379 (1985); *Bill* v. *Board of Registration of Chiropractors,* 394 Mass. 779, 781 (1985).

We think the evidence in the administrative record supports the board's conclusion that Dr. Fitzgerald was guilty of malpractice, gross misconduct, and conduct reflecting unfavorably on the veterinary profession under the standards articulated above.

There was evidence that definitive X-rays of the dog's condition should have been obtained earlier and that reasonably prudent treatment for an irreversible spinal cord injury was euthanasia, before the quarantine period had expired. The plaintiff admitted failing to disclose the quarantine, and giving deliberately misleading information concerning the seriousness of Kushka's condition. He also admitted destroying the X-rays taken soon after the accident and that he kept no detailed medical records of Kushka's treatment.

The plaintiff also argues that there was insufficient evidence to permit the finding that Kushka suffered "for much too long a time" during the period the dog was under the plaintiff's care. Both Drs. Fallon and Fitzgerald testified that the dog

was ever raised at the administrative level. The issue, therefore, is not properly before us. See *Massachusetts Ass'n of Older Americans, Inc.* v. *Commissioner of Ins.,* 393 Mass. 404, 413-414 (1984).

was capable of experiencing pain in the area anterior to the injury, and Dr. Fitzgerald himself testified that he observed what he perceived to be pain in the anterior region of the dog. The evidence also demonstrates that during the quarantine period, Kushka was required to be sedated, had no bowel or bladder control (which necessitated regular catherization), and for the most part refused food and water. The veterinarian who examined Kushka at New England Animal Medical Center also submitted a statement that in his opinion, "[a]ny delay in proper diagnosis and action . . . could have caused only unnecessary suffering for both the patient and client." We conclude that the magistrate's comment was supported by the evidence and there was no error in considering the condition of the dog by the board.

We conclude that the basis for the board's determination was established by substantial evidence and permitted the board to conclude as a matter of law that Dr. Fitzgerald was guilty of conduct reflecting unfavorably on the profession of veterinary medicine, of malpractice, and of gross misconduct in the practice of veterinary medicine.[5]

3. *Sanctions.* Absent "the most extraordinary of circumstances," we have refused to interfere with the board's choice of sanction in a particular case. *Keigan v. Board of Registration in Medicine, ante* 719, 723 (1987). *Bill v. Board of Registration of Chiropractors, supra* at 782-783. *Levy v. Board of Registration & Discipline in Medicine,* 378 Mass. 519 (1979). "It is 'well settled that in reviewing the penalty imposed by an administrative body which is duly constituted to announce and enforce such penalties, neither a trial court nor an appellate court is free to substitute its own discretion as to the matter; nor can the reviewing court interfere with the

---

[5] The board, by adopting the magistrate's recommended decision, questioned the imposition of the quarantine in this case. However, on the basis of testimony of Dr. Victor LaBranche, chief veterinarian of the Commonwealth, it may not have been improper for the plaintiff to have imposed the quarantine. Although the magistrate made findings to the contrary, it is apparent from her discussion of the sanction to be imposed that she did not rely on the plaintiff's imposition of quarantine as a determining factor in her recommendation of suspension.

imposition of a penalty by an administrative tribunal because in the court's own evaluation of the circumstances the penalty appears to be too harsh.'" *Levy* v. *Board of Registration & Discipline in Medicine, supra* at 529, quoting *Shakin* v. *Medical Examiners,* 254 Cal. App. 2d 102, 112-113 (1967), appeal dismissed and cert. denied, 390 U.S. 410 (1968). While we might well have not chosen the sanction imposed by the board, we do not think this case presents the compelling circumstances necessary for us to substitute our own judgment as to the matter. With regard to the plaintiff's arguments concerning his motivation, it is apparent from the consideration given to the choice of sanction by the magistrate, and adopted by the board, that the board did not act in an arbitrary and capricious manner. See *Keigan* v. *Board of Registration in Medicine, supra* at 722. On the facts of this case, we cannot conclude that a two-year suspension is unreasonable or excessive.

Accordingly, the stay of execution of the board's judgment is vacated and this action is remanded to the single justice for entry of a judgment affirming the board's decision suspending the plaintiff's license to practice veterinary medicine for two years.

*So ordered.*