### Cosmo Bisazza's Case.

Suffolk. September 4, 2008. - November 20, 2008.

Present: Marshall, C.J., Greaney, Ireland, Spina, Cowin, Cordy, & Botsford, JJ.

*Workers' Compensation Act,* Decision of Industrial Accident Reviewing Board,
Findings by Industrial Accident Board, Compensation, Injuries to which
act applies. *Administrative Law,* Agency's interpretation of statute. *Words,*
"Personal injury," "Occurring within."

This court concluded that the language of G. L. c. 152, § 1 (7A), which
defines compensable personal injuries to include mental or emotional dif-
ficulties only where the predominant contributing cause of such disability
is an event or series of events occurring within any employment, does not
require a greater "work-relatedness" nexus for emotional and mental
injury compensation than is required for physical injury compensation
under G. L. c. 152, § 26. [596-599]

In awarding partial disability benefits to a correction officer for mental or
emotional injury, the reviewing board of the Department of Industrial Ac-
cidents properly concluded that the predominant cause of the injury was
adequately connected to his employment under G. L. c. 152, § 1 (7A),
where sufficient evidence existed in the record to support the conclusion
that the correction officer's emotional injury originated with inmates'
taunts and threats at work, including the promise to provide false, damag-
ing stories to the press. [599-600]

Appeal from a decision of the Industrial Accident Reviewing
Board.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Vincent F. Massey,* Special Assistant Attorney General, for
the employer.

*Louis deBenedictis* for the employee.

Cordy, J. In this case, we must decide whether G. L. c. 152,
§ 1 (7A), of the workers' compensation law, which defines the
term "personal injury," requires a greater "work-relatedness"
nexus for emotional and mental injury compensation than is re-
quired for physical injury compensation under G. L. c. 152,
§ 26. Generally, a worker may recover for all personal injuries

"arising out of and in the course of his employment." G. L. c. 152, § 26. However, compensable personal injuries are defined to include mental or emotional disabilities "only where the predominant contributing cause of such disability is an event or series of events occurring within any employment." G. L. c. 152, § 1 (7A).

In upholding an administrative judge's award of partial disability payments to an employee of the Department of Correction (department) for a mental or emotional injury, the reviewing board (board) of the Department of Industrial Accidents (DIA) held that the phrase "occurring within any employment" is not more narrow than "arising out of and in the course of employment." The department appealed, and we transferred the case to this court on our own motion. We affirm.

1. *Facts.* We gather the following information from the administrative judge's findings of fact.

Cosmo Bisazza was employed as a correction officer by the department. He worked in the special housing unit (SHU) at the Massachusetts Correctional Institution at Concord. The SHU provides separate housing for gang members, pedophiles, murderers, and sex offenders serving State prison sentences. Its purpose is to protect them from attacks by the general prison population. Bisazza began working there in 1995, and did not suffer job-related stress or anxiety prior to 2003. He did not have a history of psychiatric or emotional difficulties, either before or during his employment.

In 2002, convicted child molester and former priest John Geoghan was assigned to the SHU. On March 23, 2002, Bisazza discovered feces in Geoghan's cell, and Geoghan accused Bisazza of placing them there. An investigation by the department found that Bisazza was not responsible. Geoghan then made several more accusations against Bisazza; these claims were also not substantiated.

Geoghan was transferred to a maximum security facility in April, 2003. Bisazza continued to work at the SHU. Geoghan was murdered by another prisoner on August 23, and several newspaper articles describing the incident were published over the next few days. The articles stated that prior to Geoghan's murder, unnamed correction officers had "tortured" him and had thrown feces at him.

After the first articles were published, SHU inmates changed their behavior toward Bisazza as part of a campaign to intimidate him. The inmates, including convicted murderer Lewis S. Lent, Jr., taunted Bisazza and threatened to "get" him. The inmates threatened to tell a newspaper that Bisazza was the one who had tortured and harassed Geoghan, and said that the newspaper would publish their claims (even though false) and his name. They also told him that there was nothing he could do about it. Bisazza began to feel anxiety and stress; on August 30, he left work early because of his anxiety. Beginning September 4, 2003, the Boston Herald newspaper published a series of articles repeating inmates' claims that Bisazza had harassed and beaten Geoghan, and that he had placed feces in Geoghan's cell.[1]

The department transferred Bisazza to a new position on September 5, 2003, but his anxiety continued. Bisazza suffered from stomach cramps and pain, and was unable to eat or sleep. As a result, he stopped working as a correction officer on September 16, 2003, and commenced treatment with a psychiatrist, who prescribed medications to reduce his anxiety and help him sleep. Bisazza subsequently filed a claim with the DIA for benefits.

In connection with his claim, Dr. Ronald Abramson, a psychiatrist, examined Bisazza in 2005. After an evidentiary hearing, the administrative judge adopted Dr. Abramson's report, including his analysis and diagnosis of Bisazza's symptoms. Dr. Abramson reported that, in his opinion, Bisazza suffered from posttraumatic stress disorder; that Bisazza was unable to continue working at the department; that the disability was "the direct result of trauma the employee suffered at work"; and that the trauma at work "caused the psychiatric diagnosis." The administrative judge also adopted Dr. Abramson's opinion that Lewis

---

[1] On September 4, 2003, the Boston Herald published an article entitled "Cons: Guard Dogged Priest," which repeated many of the inmates' allegations. Citing unnamed sources, the article described claims that Bisazza had "made life 'horrific' " for Geoghan. Later articles included Bisazza's photograph and repeated claims that Bisazza verbally and psychologically abused inmates, and that he was responsible for placing feces in Geoghan's cell. The newspaper even published excerpts of a letter from Lent, in which he wrote, "[Bisazza] wanted me and [Geoghan] to live there in fear for our lives every minute . . . ."

Lent's allegations to the press "composed part of the work trauma," and that there was a direct, causal connection between the inmates' harassment of Bisazza at the SHU and his symptoms. Finally, the judge adopted Dr. Abramson's opinion that "the public press problem is more important than the inmate allegations with respect to the stress disorder."

In awarding Bisazza partial disability benefits,[2] the judge concluded that while the predominant cause of his mental or emotional injury was the negative publicity rather than the inmate harassment, the "inmates' taunts that the employee would be named in the newspaper [were] part of the continuous process culminating in the articles naming the employee." Consequently, Bisazza suffered a mental or emotional injury that arose out of and in the course of his employment. The board affirmed the award.

2. *Discussion.* In workers' compensation cases, "[i]t is the exclusive function of the board to consider and weigh the evidence and to ascertain and settle the facts." *McEwen's Case,* 369 Mass. 851, 853 (1976), quoting *Chapman's Case,* 321 Mass. 705, 707 (1947). The board's decision "is not to be reversed unless it is lacking in evidentiary support or a different conclusion is required as a matter of law." *Corraro's Case,* 380 Mass. 357, 359 (1980), citing *D'Angeli's Case,* 369 Mass. 812, 815 (1976).

a. *The work-relatedness standard.* The gist of the department's argument is that the board erred in deciding that there is no higher "work-relatedness" requirement for emotional and mental injuries than for physical injuries. Specifically, the department argues that the phrase "within any employment" creates a "work-relatedness" requirement greater than the requirement that

[2]At the time Bisazza filed his workers' compensation claim, he also earned income as the owner of a martial arts studio. Because he was able to continue managing that business after the SHU incident, he sought only partial incapacity benefits, essentially the difference between his earnings at the department and the martial arts studio. This was the relief he was awarded under G. L. c. 152, § 35. Bisazza subsequently opened a second martial arts studio in August, 2004. By the time the department's appeal was heard by the board, the income Bisazza was earning from those studios was greater than the salary he had received as a correction officer; therefore, he was no longer receiving workers' compensation benefits. The department seeks to recover all of the payments previously made to Bisazza.

an injury "arise out of and in the course of employment." The department further contends that the negative publicity, which the judge concluded was the predominant cause of the injury, did not occur "within" Bisazza's employment. It rests its argument on a comparison of the language in two sections of the workers' compensation law.

The general rule is that an employee must be compensated if the employee "receives a personal injury *arising out of and in the course of his employment*" (emphasis added). G. L. c. 152, § 26. However, the term "personal injury," as defined in G. L. c. 152, § 1, includes an emotional or mental injury only if "the predominant contributing cause of such disability is an event or series of events *occurring within any employment*" (emphasis added). G. L. c. 152, § 1 (7A). The department essentially contends that the phrase "occurring within" employment is a limitation to the general "arising out of and in the course of employment" standard. Relying on a dictionary definition of "within," it posits that the statute allows compensation only if the emotional or mental injury occurred "in the scope of employment," which it contends is the same standard required in cases of vicarious liability. The administrative judge and the board disagreed, and held that the § 1 (7A) "work-relatedness" standard is no different from the § 26 "arising out of" standard.

"We give substantial deference to a reasonable interpretation of a statute by the administrative agency charged with its administration [and] enforcement . . . ." *Commerce Ins. Co.* v. *Commissioner of Ins.*, 447 Mass. 478, 481 (2006). In this case, the bare statutory language does not compel a different interpretation than the one given by the board. The phrase "occurring within" employment is not fundamentally different from "arising out of and in the course of" employment. Even assuming, arguendo, that the phrases hold different meanings, it is not clear that the phrase "occurring within" employment would establish a stricter work-relatedness standard. While the department reaches this conclusion after citing the American Heritage Dictionary and comparing that definition to a vicarious liability standard, it seems equally plausible that "occurring within" employment would be the weaker standard, because the department concedes that "arising out of and in the course of employment" contains

not one, but two factors: a causal element and a "time, place, and circumstances" element.

In any event, the department's logical leaps do not cast sufficient doubt to require overruling the board's interpretation. That interpretation is shared by the leading treatise on the subject, which opines: "It is not likely that the legislature, in using the phrase 'occurring within the employment,' intended either to enlarge or narrow the requirement that the event or series of events arise out of and in the course of employment." L.Y. Nason, C.W. Koziol, & R.A. Wall, Workers' Compensation § 9.9, at 246 (3d ed. 2003).

The board's interpretation is also consistent with the legislative history and purpose of § 1 (7A): creating a stricter event-related causation standard, not a stricter work-relatedness standard. Historically, the court has long held that the term "personal injury" included emotional or mental disabilities that arose from physical traumas. See, e.g., *Hunnewell's Case*, 220 Mass. 351, 355-356 (1915) (neurotic condition resulting from eye injury constituted personal injury). However, beginning in 1978, the court expanded the term to include emotional or mental disabilities arising from mentally traumatic events. See, e.g., *Albanese's Case*, 378 Mass. 14, 18 (1979) (series of stressful arguments caused compensable personal injury); *Fitzgibbons's Case*, 374 Mass. 633, 637-638 (1978) (psychological condition resulting from death of fellow correction officer constituted personal injury). While these decisions were confined to cases where the employee's injury arose from a specific, identifiable event, it remained uncertain whether compensation would be required for general "wear-and-tear" mental and emotional injuries that did not arise from such an event. See *Cornetta's Case*, 68 Mass. App. Ct. 107, 116 (2007).

The Legislature responded to this uncertainty by adding the third sentence of § 1 (7A), requiring that "a contributing cause" of the mental or emotional disability be "an event or series of events within any employment." G. L. c. 152, § 1 (7A), as amended by St. 1985, c. 572, § 11. Read in the context of our jurisprudence at the time, it is apparent that the Legislature intended to limit compensation to those emotional and mental injuries that arose from specific traumatic events. See L.Y. Nason, C.W.

Koziol, & R.A. Wall, Workers' Compensation, *supra* at § 9.9, at 245-246. In later amendments, the Legislature raised the causation standard to "a significant contributing cause," G. L. c. 152, § 1 (7A), as amended through St. 1986, c. 662, § 6, and then "the predominant contributing cause," G. L. c. 152, § 1 (7A), as amended through St. 1991, c. 398, § 14. All of these amendments are consistent with the goal of denying compensation for nonspecific emotional and mental disabilities. There is no evidence that the Legislature meant to somehow limit the "work-relatedness" standard by inserting the "occurring within" employment language. Rather, "it is more reasonable to consider that the [L]egislature was using the phrase merely as 'shorthand' for 'arising out of and in the course of employment.' " L.Y. Nason, C.W. Koziol, & R.A. Wall, Workers' Compensation, *supra* at § 9.9, at 246.

Finally, interpreting § 1 (7A) to have created a new, slightly narrower, work-relatedness standard would introduce unnecessary confusion in an effort to achieve an unclear benefit. The department suggests that the court adopt the rule found in vicarious liability law and allow compensation only if the mental or emotional injury occurs within "the scope of employment." However, the department does not explain how vicarious liability standards would be intertwined with workers' compensation law; it argues only that the work-relatedness standard would become "certainly narrower." We see no need to create an additional, unnecessary work-relatedness standard in apparent contravention of the Legislature's intent and the board's interpretation.

b. *Connection to employment.* The board also properly concluded that the "predominant cause" of Bisazza's injury was adequately connected to his employment under G. L. c. 152, § 1 (7A). The department relies on *Collier's Case*, 331 Mass. 374 (1954), in arguing that the causal connection was insufficient. In that case, the court affirmed a ruling of the board that an after-hours attack by a male customer on a waitress was not continuous with an earlier argument that occurred between the two on the employment premises over her refusal to serve him liquor. Consequently, the injuries were not "received in the course of her employment" and were not compensable. *Id.* at 376-377. Similarly, the department argued that the newspaper articles in

this case were not sufficiently connected to the inmates' taunts to award compensation. The board disagreed, distinguishing *Collier's Case, supra,* and concluding that there was a sufficient, continuous connection to justify compensation.[3]

There is substantial evidence in the record to support the board's conclusion. G. L. c. 30A, § 14 (7). *Fitzgerald* v. *Board of Registration in Veterinary Med.,* 399 Mass. 901, 905-906 (1987). The psychiatrist who evaluated Bisazza found that there was "a direct causal connection between the harassment and the humiliation that the employee suffered by the inmates in the SHU and the development of symptoms." The administrative judge held, and the board affirmed, that "the employee's emotional injury clearly originated with the inmates' taunts and threats at work." Although the newspaper articles were the predominant cause of the injury, the board, quoting *Dillon's Case,* 324 Mass. 102, 107 (1949), held that "the whole affair had its origin in the nature and conditions of the employment, so that the employment bore to it the relation of cause to effect." Because the inmates' threats included the promise to provide false, damaging stories to the press, the board was justified in deciding that there was a continuous connection between the newspaper articles and Bisazza's employment.

The board's interpretation of § 1 (7A) rests on adequate evidentiary support and is not contrary to law. Therefore, we affirm the board's decision.

*So ordered.*

---

[3]Although we need not decide the point, it is questionable whether the court would rule as it did in *Collier's Case,* 331 Mass. 374 (1954), if those same facts were before it today.