RECREATIONAL AMUSEMENTS OF MASSACHUSETTS, INC. *vs.*
MASSACHUSETTS TURNPIKE AUTHORITY & another[1]
(and a companion case[2]).

No. 07-P-1867.

Suffolk. November 13, 2008. - July 16, 2009.

Present: DUFFLY, SMITH, & MILLS, JJ.

*Eminent Domain. Real Property,* Appraisal report, Relocation payments.

In an action brought in Superior Court by the Massachusetts Turnpike Author-
ity (MTA), seeking review of a decision of the bureau of relocation (bureau)
in the Department of Housing and Community Development, which held
that a displaced business was entitled to relocation payments for certain
items that it claimed as compensable personal property, notwithstanding
their classification as valueless real property fixtures in an appraisal, the
judge erred in granting judgment on the pleadings in favor of the MTA on
the ground that the appraisal had a conclusive effect on property classifica-
tions at issue, where the applicable statutory and regulatory scheme did not
provide any basis for treating the appraisal as conclusive and unreview-
able. [654-655]

CIVIL ACTIONS commenced in the Superior Court Department
on March 16 and March 21, 2005.

After consolidation, the cases were heard by *John C. Crats-
ley,* J., on motions for judgment on the pleadings.

*Kevin T. Smith* for Recreational Amusements of Massachusetts,
Inc.

*Vincent F. O'Rourke, Jr.,* for Massachusetts Turnpike Authority.

MILLS, J. In 1986, the appellant, Recreational Amusements of
Massachusetts, Inc. (RA), began operating an amusement park
on about thirty-four acres of land (the land) in Millbury. That

---

[1]Department of Housing and Community Development.

[2]Massachusetts Turnpike Authority *vs.* Department of Housing and Com-
munity Development; Recreational Amusements of Massachusetts, Inc.,
intervener.

use continued until 1995, when the Massachusetts Turnpike Authority (authority) took the parcel by eminent domain for the construction of a highway interchange. In connection with that taking, the authority hired Calvin Hastings to appraise the land (Hastings appraisal). Apparently on the basis of that appraisal, the authority offered RA a pro tanto payment of $1.95 million.[3] Because RA was a displaced business, the authority was also required, under G. L. c. 79A, § 7, to compensate RA for the cost of relocating its personal property or, in the case of personal property that RA did not choose to relocate, for any actual direct loss on the property (ADLP) not exceeding its estimated cost of relocation. 760 Code Mass. Regs. § 27.09 (1993).[4]

RA chose to cease operations rather than relocate and, thus, was required to put its personal property up for auction. See 760 Code Mass. Regs. § 27.09(20)(a). After the auction, the authority was obligated to make an ADLP payment to RA in an amount to be determined by deducting the auction proceeds (about $63,000) from the preauction fair market value of RA's personal property and then selecting the lesser of that amount or the "estimated moving expenses which would have been incurred had the personal property been moved." 760 Code Mass. Regs. § 27.09(20)(b)(1). The present controversy arose when RA claimed that certain items, notwithstanding their classification as valueless real property fixtures in the Hastings appraisal, constituted compensable personal property.[5]

The controlling statute, G. L. c. 79A, § 1, as appearing in St. 1973, c. 863, § 1,[6] defines "personal property" as "tangible property situated on the real property vacated or to be vacated by a displaced person and which is considered personal property

---

[3]In the eminent domain context, a "pro tanto" payment is one that a landowner may accept without prejudice to an action for recovery of the full amount he or she claims is due.

[4]The pertinent regulations were amended in 1998. All references to regulations in this decision refer to those in effect at the time of the taking in 1995.

[5]Hastings assigned the purported fixtures zero value after concluding that the best use of the land (in his view, "big box" retail development) would require their removal.

[6]The decision below is nominally based on the applicable regulation, 760 Code Mass. Regs. § 27.01(7)(k) (1993). Whether the decision is based on the regulation or the statute makes no difference, however, because the language of the regulation simply mirrors that of G. L. c. 79A, § 1.

and is non-compensable as real property." Section 1 further provides in pertinent part:

> "In the case of an owner of real property, the determination as to whether an item of property is personal or real *shall depend upon how it is identified in the acquisition appraisals* and the closing or settlement statement with respect to the real property acquisitions; provided, that no item of property which is compensable under state and local law to the owner of real property in the real property acquisition may be treated as tangible personal property in computing actual direct losses of tangible personal property" (emphasis supplied).

Relying on the italicized language above, the authority took the view that the Hastings appraisal conclusively established, for purposes of G. L. c. 79A relocation compensation, which assets of RA were to be regarded as real property. RA disagreed and sought review by the bureau of relocation in the Department of Housing and Community Development (bureau). See G. L. c. 79A, §§ 1, 7. See also G. L. c. 23B, § 10.

In a series of decisions, the bureau ruled that the Hastings appraisal was not conclusive on the classification of RA's assets and found that Hastings had used a legally erroneous standard to distinguish real property from personalty. The bureau therefore reclassified some of the disputed items as personal property and determined, in each instance, the amount of the resultant ADLP payment. Ultimately, the bureau concluded that the authority owed RA an additional $827,953 in ADLP payments.

The authority timely sought review of the bureau's decisions in Superior Court under G. L. c. 30A, § 14. RA filed a separate complaint also seeking review in that court.[7,8] A judge allowed

---

[7]The cases were consolidated, and identical judgments were entered in the two cases.

[8]The parties do not address whether the Superior Court had jurisdiction to review the bureau's decisions. That matter is not entirely free from doubt, as G. L. c. 79A, § 7, provides that the bureau's disposition of a claim after review of "eligibility for, or the amount of, a [relocation] payment" "shall be final." In the absence of briefing and argument, we leave unaddressed whether this language was intended to bar judicial review and, if so, whether such a restriction could withstand constitutional scrutiny. See *Worcester Redev. Authy.* v. *Department of Hous. & Community Dev.*, 47 Mass. App. Ct. 525, 527 n.4 (1999).

the authority's motion for judgment on the pleadings and ruled that the bureau erred by not giving conclusive effect to the property classifications made in the Hastings appraisal.[9] In so ruling, he emphasized the statutory and regulatory provision, see G. L. c. 79A, § 1; 760 Code Mass. Regs. § 27.01(7)(k)(2), that "whether an item of property is personal or real shall depend upon how it is identified in the acquisition appraisals and the closing or settlement statement with respect to the real property acquisitions . . . ." The judge remanded the cases to the bureau for recalculation of the ADLP payment consistent with the property classifications in the Hastings appraisal. From that decision, RA appeals.[10]

*Discussion.* We conclude that the law does not support treatment of the Hastings appraisal as conclusive and unreviewable. Accordingly, we reverse so much of the judgments as required the bureau to recalculate the ADLP payment solely on the basis of the Hastings appraisal and remand the cases to Superior Court for consideration of the question, undecided below, whether the bureau's decision is supported by substantial evidence.

The provision emphasized by the judge speaks to "acquisition appraisals" in the plural *and* specifies other criteria by which to assess the real or personal nature of property, namely, "the closing or settlement statement." G. L. c. 79A, § 1, definition of "personal property." Given the Legislature's recognition that there may be more than one acquisition appraisal,[11,12] and the fact

---

[9]The judge denied RA's motion for judgment on the pleadings. The portion of the judgments (see note 7, *supra*) that is based on that ruling is not in dispute here.

[10]The authority argues that the present appeal is from an interlocutory order and is, therefore, premature. See *Chief Justice for Admn. & Mgmt. of the Trial Ct.* v. *Massachusetts Commn. Against Discrimination*, 439 Mass. 729, 730 n.5 (2003) (an "order of remand to an administrative agency is interlocutory and may not be appealed from by the parties to the underlying action"). We disagree. Although the judgments ordered a remand, they were "final [judgments] decisive of the issues." *Massachusetts Gen. Hosp.* v. *Commissioner of Pub. Welfare*, 347 Mass. 24, 29 n.4 (1964). The judgments left nothing for the bureau to do except the ministerial task of recalculating the payments, if any, due RA in light of the property classifications in the Hastings appraisal.

[11]"Acquisition" is defined in G. L. c. 79A, § 1, as "the taking of real property by eminent domain, negotiated sale, or other means, by or for any public agency . . . ."

[12]We note that another appraisal, also commissioned by the authority,

that a closing or settlement statement is traditionally the product of negotiation by the parties, we can discern no basis for treating any single acquisition appraisal as conclusive and unreviewable. That approach does not comport with the remedial purpose underlying the statutory and regulatory schemes, see 760 Code Mass. Regs. § 27.01(1) (1993), and may raise concerns of constitutional import.[13] It is inconsistent, as well, with the bureau's statutory authorization to review "eligibility for" and "the amount of" relocation payments. G. L. c. 79A, § 7. Moreover, "[w]e give substantial deference to a reasonable interpretation of a statute by the administrative agency charged with its administration [and] enforcement . . . ." *Bisazza's Case*, 452 Mass. 593, 597 (2008), quoting from *Commerce Ins. Co.* v. *Commissioner of Ins.*, 447 Mass. 478, 481 (2006). Here, the statutory language cannot be said to compel an interpretation contrary to that adopted by the bureau.

Therefore, insofar as the judgments remanded the cases to the bureau of relocation for a redetermination of the ADLP award solely on the basis of the Hastings appraisal, the judgments are reversed. The cases are remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*

---

contradicted the Hastings appraisal by classifying some of the disputed items as personal property.

[13]At common law, administrative action was presumptively susceptible to judicial review. Jaffe, Judicial Control of Administrative Action 336 (1965). Notwithstanding, the unavailability of judicial review does not, in all instances, constitute a deprivation of due process. *Pilgrim Co-op. Bank* v. *Commissioner of Banks*, 369 Mass. 963, 964 (1976). Where judicial review is required but the scope of such review is unspecified, courts will look to the standards articulated in the State Administrative Procedure Act, G. L. c. 30A, § 14(7), for guidance. *Assessors of New Braintree* v. *Pioneer Valley Academy, Inc.* 355 Mass. 610, 612 n.1 (1969) (Cutter, J.). *Sherman* v. *Rent Control Bd. of Brookline*, 367 Mass. 1, 9-11 (1975) (Kaplan, J.).