APPEALS COURT 
 
 BROCKTON REDEVELOPMENT AUTHORITY vs. EXECUTIVE OFFICE OF HOUSING AND LIVABLE COMMUNITIES[1] & another[2]

 
 Docket:
 24-P-319
 
 
 Dates:
 February 12, 2025 – July 30, 2025
 
 
 Present:
 Desmond, Grant, & Hodgens, JJ.
 
 
 County:
 Suffolk
 

 
 Keywords:
 Redevelopment Authority. Housing and Livable Communities. Real Property, Relocation payments. Administrative Law, Agency's interpretation of statute, Substantial evidence. Practice, Civil, Review of administrative action
 
 

             Civil action commenced in the Superior Court Department on October 7, 2022. 
            The case was heard by Michael P. Doolin, J., on motions for judgment on the pleadings.
            Sander A. Rikleen for the plaintiff.
             Grace Gohlke, Assistant Attorney General, for Executive Office of Housing and Livable Communities.
            GRANT, J.  During the COVID-19 pandemic, defendant Brockton Furniture LLC (Brockton Furniture) hired day laborers to move an enormous amount of furniture out of its place of business at 93 Centre Street in Brockton.  Brockton Furniture paid the day laborers in cash and did not keep receipts.  The move was necessary because the plaintiff, the Brockton Redevelopment Authority (authority), took 93 Centre Street by eminent domain in 2018.  When Brockton Furniture sought relocation payments under G. L. c. 79A and 760 Code Mass. Regs. §§ 27.00 (1998) (regulations),[3] the authority partially denied the claim on the grounds that Brockton Furniture had conducted a "self-move" without complying with regulatory requirements and did not sufficiently document its moving expenses.  As a result, and without providing any basis for its calculation, the authority approved payment for $130,633.95 less than Brockton Furniture had claimed.  On administrative review, a hearing officer of the bureau of relocation of the Executive Office of Housing and Livable Communities (bureau)[4] determined that Brockton Furniture was entitled to the full amount of its claim.  Following judicial review pursuant to G. L. c. 30A, § 14, the authority appeals from a Superior Court judgment on the pleadings in favor of the bureau and Brockton Furniture.  Because the bureau had substantial evidence to conclude that Brockton Furniture permissibly conducted a self-move and claimed reimbursement for reasonable and documented relocation expenses, we affirm.[5]
            Background.  Based on the evidence at the administrative hearing on May 4, 2022, the bureau's hearing officer found the following facts.  In 1979, Yehia Abdelmonem began an upholstery business that later became Brockton Furniture.  As of 2018, Brockton Furniture was located at 93 Centre Street, an eight-story building with no working elevator, occupying the basement and seven floors.  The first, second, and third floors were set up as showrooms displaying home furnishings, including Italian furniture that was delicate and difficult to assemble; bedroom sets and stacks of mattresses; and many light fixtures, including twenty-eight chandeliers.  Other floors held supplies, packing materials, and various personal property belonging either to Brockton Furniture or to Abdelmonem.
            In 2018, the authority acquired 93 Centre Street by eminent domain.  There is no dispute that, as an operating business at that location, Brockton Furniture was eligible for relocation assistance under G. L. c. 79A.  Pursuant to G. L. c. 79A, § 2, the authority hired Steven Mollica of W.D. Schock Company to provide relocation assistance to Brockton Furniture.  Nancy Brooks worked for W.D. Schock Company on the relocation of Brockton Furniture.
            In February 2019, Brooks visited Brockton Furniture and saw the "massive amount" of furniture and other personal property.  In May 2019, the authority formally notified Brockton Furniture of its eligibility for relocation assistance, including payment for its moving and reestablishment expenses.  In July 2019, Brooks met with several representatives of Brockton Furniture and explained the relocation process, but did not mention the possibility or requirements of a self-move.  As of late 2019, Brockton Furniture had not found a suitable replacement site for its business and was planning to have its personal property moved to storage.  In furtherance of that plan, the authority obtained estimates from two moving companies, and Brockton Furniture obtained estimates from two others.[6]
            By letter dated April 3, 2020, Brockton Furniture informed the authority that it was electing to conduct a self-move, enclosing a projected move budget that included an estimated labor cost of $343,000, an amount reached by averaging the labor costs of the three highest bids from moving companies.  By letter dated April 8, the executive director of the authority replied that until the authority received Brockton Furniture's relocation claim form, "there is no action that we can take on this matter."  Brockton Furniture found a suitable replacement site for its business.  In mid-2020, over the course of at least three months, Brockton Furniture moved its personal property out of 93 Centre Street and into its new location.  The movers were day laborers whom Abdelmonem paid in cash.  Abdelmonem did not keep receipts for these payments.
            On March 26, 2021, Brockton Furniture submitted its relocation claim form, claiming a total of $351,167.89 from the authority in relocation payments, including $191,700 in labor costs for movers.  Mollica and Brooks had reviewed and approved the claim and determined that the requested $191,100 in labor costs was a reasonable amount.  By letter dated September 22, 2021, the authority partially denied the claim, informing Brockton Furniture that because of insufficient documentation the authority would pay only eighty percent of certain amounts Brockton Furniture claimed.  Brockton Furniture appealed to the authority, see 760 Code Mass. Regs. § 27.04(4)(e), and its hearing officer upheld the partial denial of Brockton Furniture's claim.  
            Brockton Furniture appealed the partial denial of its claim to the bureau.  See G. L. c. 79A, § 7 (III) (B); 760 Code Mass. Regs. § 27.04(4)(f).  After a hearing at which Mollica, Brooks, Abdelmonem, and the authority's executive director testified, the bureau's hearing officer concluded that Brockton Furniture had permissibly conducted a self-move and that the authority was required under G. L. c. 79A, § 7, to pay Brockton Furniture the full amount of its claim, i.e., an additional $130,633.95.
            Pursuant to G. L. c. 30A, § 14, the authority sought judicial review of the bureau's decision in the Superior Court.7  On the parties' cross-motions for judgment on the pleadings, the judge ordered judgment in favor of the defendants, affirming the bureau's decision.  The authority appeals.
            Discussion.  1.  Standard of review.  "The [bureau's] decision may only be set aside if [we] determine[] that the decision is unsupported by substantial evidence or is arbitrary or capricious, an abuse of discretion, or not in accordance with law."  Coverall N. Am., Inc. v. Commissioner of the Div. of Unemployment Assistance, 447 Mass. 852, 857 (2006), citing G. L. c. 30A, § 14 (7).  "Substantial evidence 'means such evidence as a reasonable mind might accept as adequate to support a conclusion.'"  McGovern v. State Ethics Comm'n, 96 Mass. App. Ct. 221, 227 (2019), quoting Craven v. State Ethics Comm'n, 390 Mass. 191, 202 (1983).  See also G. L. c. 30A, § 1 (6).  "In reviewing administrative agency decisions, we give 'due weight to the experience, technical competence, and specialized knowledge of the agency, as well as to the discretionary authority conferred upon it'" (citation omitted).  Springfield v. Department of Telecomm. & Cable, 457 Mass. 562, 567 (2010).  Although we interpret statutes de novo, Anketell v. Office of Consumer Affairs & Business Regulation, 101 Mass. App. Ct. 628, 632 (2022), "[w]e grant deference to an agency's reasonable interpretation of a statute it is tasked with enforcing."  Hartnett v. Contributory Retirement Appeal Bd., 494 Mass. 612, 616 (2024).  Our approach "is one of deference and restraint, but not abdication."  Worcester Redev. Auth. v. Department of Hous. & Community Dev., 47 Mass. App. Ct. 525, 530 (1999).  "As the party challenging an agency decision under G. L. c. 30A, § 14, [the authority] has the burden of proof to demonstrate the invalidity of the administrative determination."  Burke v. Board of Appeal on Motor Vehicle Liab. Policies & Bonds, 90 Mass. App. Ct. 203, 206 (2016).  See Police Dep't of Boston v. Kavaleski, 463 Mass. 680, 689 (2012) ("Because it is the department that appealed from the commission's decision, the department bears the [heavy] burden of establishing that the decision is invalid").
            "By enacting G. L. c. 79A, the Legislature has decided, as a matter of public policy, that a person incurring relocation expenses when displaced . . . by a public agency ought to be compensated therefor."  Department of Community Affairs v. Massachusetts State College Bldg. Auth., 378 Mass. 418, 428-429 (1979).  See Worcester Redev. Auth., 47 Mass. App. Ct. at 528 (Federal and State statutes governing relocation assistance "evince a design to minimize the adverse impact of displacement by help to . . . businesses").  The statute expressly provides that the relocation agency shall "administer relocation payments in a fair and equitable manner."  G. L. c. 79A, § 6.  As directed by G. L. c. 79A, § 12, to carry out the purposes of the statute, the bureau has promulgated regulations, 760 Code Mass. Regs. §§ 27.00.  Because "the statutes in question involve an explicit, broad grant of rule-making authority" to the bureau, "[o]ur deference is especially appropriate."  Goldberg v. Board of Health of Granby, 444 Mass. 627, 634 (2005).
            2.  Self-move.  The authority argues that Brockton Furniture did not comply with the regulatory requirements for a self-move, and thus was not entitled to the full amount of its claim.  The bureau's hearing officer concluded, however, that the authority failed to inform Brockton Furniture of its right to conduct a self-move or of any requirements for doing so, and as a result Brockton Furniture cannot be faulted for failing to follow regulations of which it was unaware.
            Under G. L. c. 79A and the regulations, the authority was required to "fully inform [Brockton Furniture] at the earliest possible date as to the availability of relocation payments and assistance," G. L. c. 79A, § 6, as well as "the procedures for obtaining payment," 760 Code Mass. Regs. § 27.04(1)(a)(1).  As to a self-move, the regulations provide that a "displaced business, with the advance agreement of the displacing agency, may make a self-move as long as the amount eventually claimed for relocation payment does not exceed a maximum negotiated between the business and the relocation advisory agency in advance of the move."  760 Code Mass. Regs. § 27.05(5).
            The bureau's hearing officer found that the authority never informed Brockton Furniture about those requirements for a self-move.  The subject of a self-move was not discussed at the meetings between Brooks and Brockton Furniture in 2019, because at that point Brockton Furniture was planning to have a moving company put its personal property into storage.  The authority does not contest the bureau's finding that it did not inform Brockton Furniture of the procedures for negotiating a self-move, but argues that it was not required to do so.  We conclude that under the statute and regulations discussed above, the authority did have that obligation.  See G. L. c. 79A, § 6; 760 Code Mass. Regs. § 27.04(1)(a)(1).
            Moreover, the bureau's determination that Brockton Furniture permissibly conducted a self-move was also supported by the evidence of the authority's response to Brockton Furniture's notice that it would do so.  By its letter dated April 3, 2020, soon after the onset of the COVID19 pandemic, Brockton Furniture notified the authority that it was electing to conduct a self-move.8  Brockton Furniture stated that it had “decided against placing its furniture into storage.  To do so would put Brockton Furniture out of business and make it near impossible to reestablish its business in this unprecedented time of economic crisis."  In its reply dated April 8, 2020, the executive director of the authority informed Brockton Furniture, "To reiterate my guidance to you in my letter dated March 20, 2020,[9] we have requested that [Brockton Furniture's relocation consultant] . . . prepare and submit the appropriate relocation claim forms for our consideration," and "[u]ntil such time as we receive a relocation claim, . . . there is no action that we can take on this matter."  The authority did not attempt to negotiate the projected budget that Brockton Furniture had submitted with its April 3 letter, and the hearing officer found that "the [authority] did not notify Brockton Furniture, at any time, that an agreement, of any kind, was necessary before starting a self-move."  The bureau's hearing officer credited Mollica's testimony that, in practice, self-move agreements are not always reduced to writing, and determining costs is a part of the negotiation process in reaching agreement for a self-move.  After Brockton Furniture notified the authority that it would be conducting a self-move, Brooks did prepare a spreadsheet of relocation expenses.
            In these circumstances, we conclude that substantial evidence supported the bureau's determination that Brockton Furniture permissibly conducted a self-move.  See Worcester Redev. Auth., 47 Mass. App. Ct. at 531-532 (substantial evidence supported bureau's conclusion that oil tanks were personal property as defined in G. L. c. 79A).
            3.  Relocation expenses.  The authority contends that it permissibly paid Brockton Furniture only eighty percent of certain categories of its claim because Brockton Furniture did not sufficiently document its relocation expenses, particularly the cash payments to day laborers who moved its personal property.
            a.  Statutory and regulatory documentation requirements.  General Laws c. 79A, § 7 (I) (A) (1), required the authority to pay "actual documented reasonable expenses" incurred by Brockton Furniture.  See generally D.A. Randall & D.E. Franklin, Municipal Law and Practice § 28.23 n.5 (5th ed. 2006 & Supp. 2024).  The authority argues that we should interpret the words "actual documented reasonable expenses" in § 7 (I) (A) (1) to require it to pay only reasonable expenses that were actually documented by contemporaneous receipts.  The bureau counters that § 7 (I) (A) (1) does not explicitly require receipts, and because the authority did not inform Brockton Furniture in advance of its expectation of receipts, it would be unfair to require Brockton Furniture to provide them.  We agree.
            Three sections of the regulations shed light on the documentation requirement of G. L. c. 79A, § 7 (I) (A) (1).  First, 760 Code Mass. Regs. § 27.04(4)(i) provides that "[a] displaced person shall be given reasonable assistance in documenting a claim."  We interpret that to mean that, if the authority expected Brockton Furniture to obtain and retain contemporaneous receipts for each expense, the authority was required to provide reasonable assistance by notifying Brockton Furniture of that expectation in advance.  The bureau's hearing officer found that the authority never informed Brockton Furniture of that expectation.
            Second, 760 Code Mass. Regs. § 27.05(1) requires the authority to pay "actual and reasonable moving and related expenses" of Brockton Furniture, which amplifies the meaning of "actual documented reasonable expenses" in G. L. c.  79A, § 7 (I) (A) (1).  The bureau's hearing officer interpreted the statute and the regulations to require evidence that "the need for the cost is real and documented, and not that there be a receipt for every expense."  We defer to the bureau's reasonable interpretation of § 7 (I) (A) (1) and the regulations.  See Goldberg, 444 Mass. at 634.  We do not equate the word "documented" in § 7 (I) (A) (1) with "contemporaneous receipts."  See West Broadway Task Force v. Boston Hous. Auth., 414 Mass. 394, 399 (1993) ("The statutory requirements of c. 79A are not formalistic but functional").
            Third, 760 Code Mass. Regs. § 27.04(4)(i) explains the type of documentation required:  "Any claim for a relocation payment shall be supported by reliable documentation such as paid bills, canceled checks, [or] other evidence payments were actually made or were due" (emphasis added).  That regulation permissibly interprets "actual documented reasonable expenses" in G. L. c. 79A, § 7 (I) (A) (1) as not necessarily requiring a contemporaneous receipt for every expense.  See Worcester Redev. Auth., 47 Mass. App. Ct. at 530 (in reviewing whether substantial evidence supports bureau's findings, court's role is not "to look at abstracted items of evidence, but to examine the whole record and to look at the evidence contextually").
            To be sure, receipts and other contemporaneous documentation of expenses are to be encouraged, and without them a claimant runs the risk of being unable to otherwise justify an expense.  But the regulatory scheme simply does not make them the sine qua non of compensation for relocation expenses.  "Other evidence" may suffice.  Against this statutory and regulatory backdrop, we turn to the authority's arguments about specific relocation expenses claimed by Brockton Furniture.
            b.  Labor costs for moving.  Brockton Furniture claimed $191,700 for reimbursement of labor costs for movers, which constituted the bulk of its moving expenses.  For moving expenses including labor,[10] the authority paid Brockton Furniture $121,000, without explaining how it calculated that amount, because of the "lack of source material and documentation."
            In support of its claim for labor costs, Brockton Furniture submitted two documents:  (1) the spreadsheet, prepared by Brooks in cooperation with Brockton Furniture, that extrapolated reasonable estimated moving expenses from the three highest of the previously obtained moving company estimates; and (2) a memorandum prepared by Brockton Furniture and edited by Brooks that computed labor costs at $900 per day for a minimum of six movers over a period of many weeks.
            The authority argues that the spreadsheet did not constitute substantial evidence supporting Brockton Furniture's claim for labor costs, because the computations in it improperly omitted the lowest bidder of the four moving companies, see note 6, supra.  However, by letter to the authority shortly after receiving the bids, Brockton Furniture had contested the low bidder's quote, pointing out that the low bidder's representative had spent only a fraction of the time evaluating the site that the other three bidders had spent, and asserting that the disparity in hours rendered the low bid unrealistic and unreliable.  Brooks apparently agreed, as she determined Brockton Furniture's reasonable cost for movers based in part on the three highest estimates.  In these circumstances, Brooks was not required to consider the lowest bid, and the hearing officer did not have to adopt the authority's calculations that relied on it.  See Recreational Amusements of Mass., Inc. v. Massachusetts Turnpike Auth., 74 Mass. App. Ct. 651, 655 (2009) (under G. L. c. 79A, "we can discern no basis for treating any single acquisition appraisal as conclusive and unreviewable").  Cf. Alan Josephsen Co. v. Village of Mundelein, 2024 IL App. (1st) 230641 ¶¶ 16-18 (2024) (deferring to hearing officer's decision, under analogous Federal regulations, as to which moving company bids to consider in determining relocation costs for self-move).
            The authority also argues that Brockton Furniture's computation of payments to movers in the spreadsheet and memorandum were "an after the fact hypothetical calculation," and thus not based on substantial evidence.  In addition to the spreadsheet and memorandum, however, "other evidence payments were actually made or were due," 760 Code Mass. Regs. § 27.04(4)(i), proved that the day laborers were paid to move Brockton Furniture's property.  There is no doubt that, at Abdelmonem's direction, an enormous amount of furniture and other personal property of Brockton Furniture was moved from 93 Centre Street to its new location.  Contrast Elm Shank & Heel Co. v. Commonwealth, 401 Mass. 474, 479 (1988) (tenant entitled to no payment under § 7 (I) (A), where prior to move its personal property was destroyed in fire), S.C., Champigny v. Commonwealth, 422 Mass. 249, 252 (1996).  As the bureau's hearing officer found, the thirty-six page inventory of Brockton Furniture's personal property, see note 6 supra, was documentation of the work performed by the movers.  See Boylston Dev. Group, Inc. v. 22 Boylston Street Corp., 412 Mass. 531, 543 (1992) (inventory of property necessary to determine reasonable moving expenses under G. L. c. 79A).  Moreover, the hearing officer credited Abdelmonem's testimony that he hired the day laborers and paid them in cash.  The move was further documented by invoices and receipts for truck and equipment rentals and bills for disposal services.
            The authority contends that by employing day laborers Brockton Furniture did not use "sound business practices" as required by the regulations.  See 760 Code Mass. Regs. § 27.05(6) ("A displaced business shall use sound business practices when employing movers and/or contractors for a move").  There is no suggestion that the day laborers' work was inadequate in any way.  Moreover, we note that Brockton Furniture's $191,700 claim for labor costs using day laborers was far less than the $343,000 amount for labor costs in the projected budget Brockton Furniture included with its April 3, 2020 letter notifying the authority of the self-move.  The $191,700 claim was also less than half of the estimate for moving costs that the authority obtained from one of the moving companies from which it received an estimate (not the low bidder).[11]  If the authority wanted to negotiate a maximum amount for the relocation payment, it should have done so in accordance with 760 Code Mass. Regs. § 27.05(5), before Brockton Furniture undertook the self-move.  In addition, while the authority objects to Brockton Furniture's use of day laborers, it does not seem to object to the lower moving costs that resulted from use of day laborers.  Nor could it, as it correctly characterizes itself as duty-bound to protect public dollars.  Brockton Furniture's hiring day laborers reduced its moving costs, and there is no evidence here that it overreached in the reimbursement it requested.
            We conclude that substantial evidence supported the bureau's determination that the claimed $191,700 in payments to day laborers were "actual documented reasonable expenses" within the meaning of G. L. c. 79A, § 7 (I) (A) (1).  See Worcester Redev. Auth., 47 Mass. App. Ct. at 531-532.
            c.  Tenant improvements and soft costs.  The authority argues that because Brockton Furniture did not sufficiently document its labor costs for movers, the authority permissibly paid only eighty percent of Brockton Furniture's claims for other expenses, including tenant improvements to its new site and soft costs such as advertising.[12]
            In its letter dated September 22, 2021, the authority informed Brockton Furniture that for categories including tenant improvements and soft costs, "the [authority] is willing to incur eighty percent (80%) of the claim amount."  The authority did not explain how it arrived at the decision to pay eighty percent of those claims, though it cited "the lack of receipts and verifiable source materials."  Asked at the hearing how the authority decided to pay eighty percent, its executive director testified that that Brockton Furniture's claim "seemed to be very circumstantial and not very factual" and so the authority used the eighty percent figure for those categories as it had for labor costs.[13]  The hearing officer found that the authority had failed to provide "any specific rational[e] for [its] decision" to pay only eighty percent of those categories of Brockton Furniture's relocation costs or to identify any specific charges for which support was missing.  The hearing officer found that "no evidence was presented upon which we can determine the basis for" the numbers the authority used.
            The authority does not argue that Brockton Furniture's claims for tenant improvements and soft costs were not covered by G. L. c. 79A, § 7.  Contrast Cumberland Farms, Inc. v. Montague Economic Dev. & Indus. Corp., 78 F.3d 10, 13 (1st Cir. 1996) (§ 7 did not cover certain expenses at new location).  Rather, the authority argues that substantial evidence did not support the bureau's conclusion that the authority was required to pay the twenty percent of Brockton Furniture's relocation costs in those categories that the authority had denied.  The argument is unavailing, because, in addition to the utter lack of an explanation for how the authority arrived at a twenty percent reduction, the bureau's hearing officer found that Brockton Furniture's claims in those categories matched the "estimated and actual reasonable expenses" as prepared by Brooks, and that both Brooks and Mollica determined that the expenses were reasonable.  We conclude, therefore, that the bureau's hearing officer's decision requiring the authority to pay the total amounts claimed by Brockton Furniture for tenant improvements and soft costs was supported by substantial evidence.  See Worcester Redev. Auth., 47 Mass. App. Ct. at 531-532.
Judgment affirmed.
 
footnotes

 
            [1] Since the commencement of this lawsuit, the functions of the original defendant, the Department of Housing and Community Development, have been transferred to the Executive Office of Housing and Livable Communities.  See St. 2023, c. 7.  See also Fort Point Invs., LLC v. Kirunge-Smith, 103 Mass. App. Ct. 758, 764 n.8 (2024).
            [2] Brockton Furniture LLC.
            [3] All citations to the regulations throughout this decision are to the version adopted in 1998 and in effect in 2018 when the taking occurred.
            [4] The bureau previously was within the Department of Housing and Community Development (department) and is now within the Executive Office of Housing and Livable Communities (HLC).  "[W]e refer to the bureau as the decision maker, although the agency that is the decision-making authority and the party to this appeal is, of course," the HLC.  Worcester Redev. Auth. v. Department of Hous. & Comm. Dev., 47 Mass. App. Ct. 525, 527 n.4 (1999).
            [5] We note that Brockton Furniture has not submitted a brief and did not participate in oral argument on this case.
            [6] Each moving company based its estimate on a site visit, as well as a thirty-six page inventory of Brockton Furniture's personal property, photographs, and a specification sheet.  Those documents are not in the appellate record.
            One of the estimates obtained by the authority was much lower than the other three, and Brockton Furniture's relocation consultant wrote to the authority expressing concerns that the low bidder had visited the site for less than an hour and therefore its estimate was "inaccurate or not realistic and jeopardizes accomplishing the move."  Abdelmonem believed that the low bidder lacked the expertise to move Brockton Furniture's personal property, particularly the fragile Italian furniture, because it had devoted insufficient time to truly understand the size and complexity of the move and had communicated that any damage could be addressed through insurance.
            [7] We note that G. L. c. 79A, § 7 (III) (B), states that the bureau's disposition "shall be final."  Neither party has argued, in the Superior Court or before us, that review pursuant to G. L. c. 30A was improper, and so we address the merits.  See Recreational Amusements of Mass., Inc. v. Massachusetts Turnpike Auth., 74 Mass. App. Ct. 651, 653 n.8 (2009); Worcester Redev. Auth., 47 Mass. App. Ct. at 527 n.4.
            [8] The regulations required that the displaced business "send notice to the relocation advisory agency of its intent to move at least 30 days prior to the moving date."  760 Code Mass. Regs. § 27.05(7).  No issue is before us as to whether Brockton Furniture sent the April 3 notice sufficiently in advance of its moving date.
            [9] The record before us does not contain a copy of a letter dated March 20, 2020, and the authority does not argue that any such letter communicated the requirements for a self-move.
            [10] We infer that this amount included moving expenses other than labor, such as truck rentals.
            [11] The second bid obtained by the authority estimated moving costs of $411,000.
            [12] Brockton Furniture's claim also sought $2,500 for a search expense.  The authority's letter did not mention that line item and the authority's brief does not address it, and so we focus our discussion on Brockton Furniture's claims for tenant improvements and soft costs.  In addition, we note that Brockton Furniture requested $25,000 for reestablishment expenses, which the authority agreed to pay.
            [13] In fact, the bureau's hearing officer noted, the amount the authority paid in those categories was less than eighty percent.  The hearing officer found that the authority calculated the eighty percent figure at $74,533.94, but it should have been $82,707.50.